Commonwealth *v.* Capps, Appellant.

Argued April 29, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William M. Power,* with him *William F. Heefner,* for appellant.

*Donald W. VanArtsdalen,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 23, 1955:

George Capps, defendant-appellant, a married man aged twenty-two years, was convicted by a jury of mur-

74

der in the first degree, with penalty fixed at death, for the rape and killing of Marta Gibbons, a fifteen year old school girl, on the night of January 22, 1954, at an isolated location near Curtis Lake, Falls Township, Bucks County. The Commonwealth contends that the killing was either wilful, deliberate and premeditated, or in the perpetration of a common law forcible rape, or both. As in *Commonwealth v. Prenni,* 357 Pa. 572, 55 A. 2d 532, whatever actually happened on that evening was solely within the knowledge of defendant and the victim. Defendant at the time of his arrest made and signed a voluntary statement to the police, which he has not repudiated. There is no contention that his statements and admissions were obtained by threat, coercion, promise, or improper inducement or representation. At the trial, upon the witness stand, defendant repeated his statement and admission. His story is extremely revolting. The victim, a young school girl, lived with her parents across the street from defendant; defendant occupied a home with his wife who, at the time, was pregnant; deceased on the night of the killing had been employed as a "baby sitter" for a neighbor; she was accompanied by her seven year old half-sister; after completion of her task, the two sisters returned to their home; their mother was a patient in a hospital and deceased's stepfather was at work; the sisters were alone in the house when defendant came in; after the small sister had gone to bed, defendant testified that he and deceased fondled each other; fearing the father's return, defendant said that he suggested that they go out in defendant's automobile, to which suggestion he said deceased agreed; that they twice had sexual intercourse in the car; defendant said that *deceased* removed many articles of her clothing; defendant said he remarked to the child: "Suppose I get you pregnant like I did my wife?"; he

testified that deceased then was sick, vomited, and became hysterical, yelling, crying and stating that she proposed to tell her father what defendant had done to her; as deceased continued to yell and cry defendant said he hit her on the head and caused her to fall to the ground; deceased continued her hysterical crying and yelling, whereupon defendant said he went to the car, took a revolver from under the front seat and shot and killed her, dragged her dead body to a place of concealment, and threw away the gun and also the clothes which he said deceased had discarded.

Counsel for defendant frankly conceded at the argument that the crime of murder in the first degree had been proved by the Commonwealth. Counsel, however, relies upon alleged trial errors in the hope to secure a new trial, wherein defendant might be able to induce another jury to fix the penalty at life instead of death which this jury imposed.

Before reviewing alleged trial errors, the question of murder in the perpetration or attempted perpetration of rape, statutory or at common law, must be considered. The charge of the learned trial Judge was more favorable to defendant than he was entitled to receive. In *Commonwealth v. Neill*, 362 Pa. 507, 67 A. 2d 276, we said (citing *Commonwealth v. Exler*, 243 Pa. 155, 89 A. 968) that the term "rape" used in the Act making murder committed in the course of a felony murder of the first degree, is limited to rape at common law. This dictum was true under the Act of March 31, 1860, P. L. 382, but it erroneously overlooked the provision of the later Penal Code of June 24, 1939, P. L. 872, 18 PS sec. 1, et seq., which provided (sec. 701): "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or

attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree."

Section 721 of the Code defines rape: "Whoever has unlawful carnal knowledge of a woman, forcibly and against her will, or whoever, being of the age of sixteen (16) years and upwards, unlawfully and carnally knows and abuses any woman child under the age of sixteen (16) years with or without her consent, is guilty of rape, a felony, . . ."

In *Commonwealth v. Maloney*, 365 Pa. 1, 73 A. 2d 707, we said (p. 11): "When the Penal Code of 1939 refers to burglary in section 701 it must be understood as meaning the crime of burglary as defined in section 901 of the same Act. The rule is well established that a word or phrase, the meaning of which is clear when used in one section of an act, will be construed to mean the same thing in another section of the same act: Bonomo Unemployment Compensation Case, 161 Pa. Superior Ct. 622, 628, 56 A. 2d 288, 291."

In section 701 of the Code "rape" is included in the same sentence as burglary. It necessarily follows that the definition of rape in Section 721 is to be used in all sections of the Act, and this definition includes *statutory rape*.

There was abundant evidence of a circumstantial nature to permit a jury to find that forcible rape was *in fact* committed by this defendant. But such evidence fades in significance because defendant admits he had intercourse with deceased, a fifteen year old child, and under the Penal Code this constitutes rape, whether the act was with or without her consent. The fact that intercourse had occurred was clearly established by medical testimony. By overwhelming evidence the Commonwealth proved not only that the

killing was wilful, deliberate and premeditated, but was done in the perpetration of statutory rape, and probably through force and against the victim's consent.

The first alleged trial error is the refusal of the court below to grant defendant's requests for continuance and change of venue. At the request of defendant's counsel the trial fixed during the week of March 22, 1954, was continued until April 26, a period of three months after date of the killing. The learned trial Judge ruled that the newspaper stories were not so inflammatory and biased in factual presentation as to cause, or be evidence of, public prejudice or hysteria. The granting, or refusing, of a change of venue or continuance, is within the sound discretion of the trial court: *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353, and the many cases cited therein. We have reviewed all the evidence and do not regard that the trial Judge abused his discretion.

It is also contended that upon defendant's *arrest,* and prior to his written statement, or admission, his request for counsel was denied. The statement or admission consisted of five single-spaced typewritten pages, which defendant dictated, and which he read, signed and swore to. Significantly enough, such statement was admitted into evidence without objection. Defendant did not claim in his testimony at the trial that the statements were coerced by threats, force or violence. He testified that he stated to the police he desired to consult with a lawyer and a priest. Officers present testified that he did *not* so request the services of a lawyer, but did ask for a priest, whom they endeavored to secure. The learned trial Judge submitted this factual issue to the jury with instructions that if they found the statement had been obtained by oppressive, coercive, illegal or unconstitu-

tional methods, it should be disregarded: *Commonwealth v. Johnson,* 372 Pa. 266, 279, 93 A. 2d 691.

Defendant contends that the admission into evidence of photographs and clothing was detrimental to him. Certain of the photographs and articles of clothing of the deceased were admitted into evidence without objection, and others, over objection. By repeated decisions of this Court, it has long been held that photographs and clothing may be offered in evidence where offered for a specific purpose. As Chief Justice HORACE STERN (then Justice) said, in *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353, (p. 398) : "All that the law requires is that photographs should not be introduced merely for the purpose of exciting the emotions of the jurors, but only where they are helpful in aiding them in their investigation of the crime and the defendant's guilt, and that purpose should be carefully explained to them. The matter is one for the exercise of the trial judge's discretion: [citing cases]." See also: *Commonwealth v. Davis,* 363 Pa. 91, 96, 69 A. 2d 123; *Commonwealth v. Gibbs,* 366 Pa. 182, 185, 76 A. 2d 608. In his charge the trial Judge carefully explained the purpose of the admission and specifically warned the jury that they were not to allow themselves to be prejudiced or influenced by the exhibits.

It is clear that the exhibits were properly admitted. We need not go into the gruesome details of this killing. The pictures of the half nude body and the clothing, some bloody, were relevant as to the circumstances connected with the charge of a forcible rape. Much has been argued about the pictures taken in the morgue showing the gunshot wound which caused the death. There is nothing in the photograph to indicate that it was taken in the morgue. The ballistic expert *did not see the body,* but testified *from the photograph*

alone, that the gun was placed close to the head of the victim when fired. From this photograph it was shown that there were no powder marks visible on the head, due to the fact, as testified by the defendant, that defendant had fired the gun after he had muffled it with a sweater. We see no error in the admission of these exhibits.

Defendant complains of the refusal of the court to order the District Attorney to deliver reports of experts. The court ordered the District Attorney to permit defense attorneys to inspect certain reports, such as those respecting autopsy, defendant's statement, etc. The court refused, however, to direct the District Attorney to reveal the contents of a report of the investigation by the Pennsylvania State Police. This report had to do with the finding of a police ballistics expert. Since defendant admitted that he shot and killed the victim, it is wholly immaterial that there might have been other unexploded cartridges in the revolver. This contention is wholly without merit.

The court refused to withdraw a juror after certain alleged inflammatory and prejudicial remarks made by the District Attorney when addressing the jury. The District Attorney questioned the veracity of defendant, which under this testimony is quite understandable. He referred to the long, technical, hypothetical questions propounded to the psychiatric expert as "loaded"; he also posed the question to the jury: "what do you do with a mad dog?" At the direction of the court, the closing address of the District Attorney was transcribed and made part of the record. We have carefully read and considered the address. As the trial court accurately said "when the nature of the defense is taken into consideration, we cannot say that these remarks were prejudicial error." It is solely within the

discretion of the trial Judge to order the withdrawal of a juror on the ground that the remarks of counsel were improper and materially detrimental to the fair trial of the case: *Commonwealth v. Crittenton*, 326 Pa. 25, 191 A. 358, and the cases therein cited. The remarks in that case were much stronger than those here used, viz. (p. 31): " 'If a rabid dog or a rattlesnake or some loathsome creature of some kind were attacking your little child, you would run out and try to protect it; you would have no hesitancy in killing a wild boar or a tiger or any animal of that description that was a beast of prey and stalking your child as its victim. And, I say to you, members of the jury, from the evidence in this case, he was almost like a beast of prey that night, stalking for its victim, and that he had the formed intent in his mind of deliberate, planned murder.' "

We have carefully reviewed the record in this case and find no reason for setting aside the verdict. Defendant received an eminently fair trial and enjoyed the benefit of representation by able counsel.

Judgment and sentence affirmed.