Commonwealth *v.* Coleman, Appellant.

Argued November 14, 1960. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Isaiah W. Crippins,* with him *Rufus Scoville Watson,* for appellant.

*Arlen Specter,* Assistant District Attorney, with him *Augustine J. Rieffel,* Assistant District Attorney, *Paul M. Chalfin,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Eagen, January 4, 1961:

Frank McCoy perpetrated an armed robbery in a grocery store in the City of Philadelphia on July 1, 1957. During the commission of the robbery, the own-

er of the store was shot and killed by McCoy. (The victim was McCoy's former employer). One James Allen acted in the role of lookout. McCoy was tried by a jury and convicted of murder in the first degree and sentenced to death. Allen pleaded guilty generally to the charge of murder and was sentenced to life imprisonment. The Commonwealth then tried the appellant Coleman, charging that he was a participant as an accessory before and after the fact. He was found guilty of murder in the first degree; the jury recommended a sentence of life imprisonment. From the judgment of sentence, he prosecutes this appeal.

The question of the sufficiency of the evidence to sustain the conviction is not raised and a reading of the record discloses why. In the prosecution of Coleman, both McCoy and Allen testified for the Commonwealth. Their testimony amply established that the appellant drove McCoy and Allen in his car to the scene of the crime, he knowing full well that McCoy intended to commit a robbery; that McCoy had a gun which he hid under the seat of the car; that they first stopped at an Army-Navy store for McCoy to purchase sunglasses to be worn in order to prevent identification; that on the way Coleman inquired of McCoy as to how much he thought he would get; that McCoy and Allen instructed the appellant to wait a short distance from the intended robbery site; that after the robbery McCoy and Allen jumped into the car and said "get out of here fast"; that the appellant did as directed and asked them, "How did it go?"; that appellant later shared in the stolen money; that Allen and the appellant went to the City of Baltimore, Maryland, on the same night; that the same two individuals discussed the events a day or two later; and, that the appellant told Allen to give himself up but not to involve him and that, in return, he would help get Allen out on bail. Police detectives testified that, when they first

interviewed the appellant on July 6, 1957, he denied any knowledge of the crime; that he denied knowing McCoy and said that he did not recognize him even when shown the latter's photograph; that he said he had loaned his car to Allen on July first; and, that he was not in the car on that day with McCoy and Allen.

Under this proof, the jury had every right to return a verdict of guilty. It was for the fact-finding body to resolve the truth. An accessory before the fact is equally guilty with the principal, even though he is not on the scene in person. If a killing by a felon occurs in the furtherance of a robbery, all who participated, including the driver of the get-away car, are guilty of murder in the first degree: *Commonwealth v. Gilida*, 309 Pa. 501, 164 Atl. 531 (1932); *Commonwealth v. Lowry*, 374 Pa. 594, 98 A. 2d 733 (1953).

In an effort to gain a new trial, several assignments of error are urged, the espousal of which may be likened to a grasping for straws in a last valiant effort to upset a well-founded judgment.[1]

It is argued that the trial court erred in failing to charge either on the defense of alibi or on the legal merit of character testimony. In the first place, no such requests for charge were made. The points for charge submitted by defendant's counsel (which did not include the matters he now assigns as reversible error) were withdrawn by him after the trial judge completed his instructions to the jury, with the observation by counsel that all facets of the case had been "covered sufficiently." Only a "general technical exception" was entered. At the close of the charge, the trial judge asked if any further instructions were desired. No response was forthcoming. But what is more significant is that an alibi defense was not offered. Neither was there proof of

---

[1] This is said without intended reflection upon counsel whose dedicated efforts on behalf of his client are, indeed, laudable.

reputation for good character. A trial judge is not obliged to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at the trial: *Commonwealth v. Thompson*, 389 Pa. 382, 133 A. 2d 207 (1957).

At the trial, the defendant in his testimony admitted driving the car and being with McCoy and Allen on the day and occasion of the robbery, an admission which dovetailed with the narrative the latter two had related in their testimony. He denied knowledge of their purpose to rob or of their actions while absent from his immediate company and also disputed his involvement in the crime itself. However, he did say, "I could not have committed the crime because I was elsewhere at the time." Under the circumstances, this was not evidence of alibi and no specific charge thereon was required. In addition, despite the lack of evidence in this respect, the trial judge exercised commendable fairness and caution in clearly explaining to the jury the nature of the defense, i.e., that the defendant was an innocent tool of the others without any knowledge of their criminal scheme.

Although no evidence of the prior good reputation of the defendant was presented, appellant did volunteer in the course of his testimony the following: "I ain't never been around no thieves and robbers." This, alone, did not, of course, put his general reputation for good character in issue.

It is argued that the general atmosphere of the trial worked to deprive appellant of a fair trial. To sustain this position, certain incidents are brought into focus. First, it is urged that a photograph of the corpse of the victim may have been seen by the jury. This exhibit was not introduced into the evidence but was used by two witnesses while on the stand for identifica-

tion purposes. The trial judge noted of record his doubt that the jury had seen the photograph. There is no proof that it did. Be that as it may, the photograph could properly have been admitted into the record for the purpose of identification of the deceased and, in any event, its nature was not such as would likely cause prejudicial reaction, and was not a proper subject of prejudice: *Commonwealth v. Capps*, 382 Pa. 72, 114 A. 2d 338 (1955). The next cited example of prejudicial atmosphere in which the trial is alleged to have taken place is that, when two eyewitnesses to the robbery were called to the stand, the assistant district attorney requested that they not be required to give their home addresses. We see no resulting harm. They did not identify the appellant and their testimony dealt completely with McCoy and Allen. The argument that this request permitted an inference that they feared Coleman's retribution and that it thereby labeled him in the eyes of the jurors as an evil man is, therefore, a bit farfetched. It is also urged that the assistant district attorney made certain side remarks in the course of the trial and asked certain leading questions which caused the defendant undue legal harm. An examination of the record reveals nothing in this respect that would warrant our conclusion that an unfair trial ensued. It is solely within the discretion of the trial judge to order the withdrawal of a juror on the ground of improper conduct by counsel which is materially detrimental to the fair trial of the case: *Commonwealth v. Capps*, supra. There was in this case no abuse of this discretion. Finally, the defendant complains of certain rulings by the trial judge sustaining objections of the Commonwealth to questions asked by defense counsel. An analysis of the allegedly improper rulings shows them to be free of error.

We have considered each and every reason assigned for a new trial. Viewed individually and collectively,

244

they have no merit and require no further discussion. The charge of the trial judge was correct, adequate and clear. Throughout the entire trial, his conduct was eminently fair and ever directed towards effectuating an honest determination of the issues.

Judgment affirmed.