Commonwealth *v*. Johnson, Appellant.

Argued November 14, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused April 10, 1961.

*Paul Leo McSorley,* with him *John E. Walsh, Jr.,* for appellant.

*Thomas M. Reed,* Assistant District Attorney, with him *Patrick F. Casey* and *Arlen Specter,* Assistant District Attorneys, *Paul M. Chalfin,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BOK, January 16, 1961:

This is the case of one of eleven defendants who have been separately tried for the beating to death of a Korean student named In-Ho-Oh in Philadelphia on April 25, 1958. He pleaded not guilty but was convicted of murder in the first degree by a jury, which set the penalty at imprisonment for life.

As we must remand the record for a new trial, we will not narrate the evidence. It should suffice to say that while the defendant on trial did not strike the deceased he was seen going through his pockets and that the wallet of deceased was found in the home of one of the other defendants. The defendant's several and conflicting statements were offered to the jury to pass upon. The question of whether there was a conspiracy and a robbery and whether defendant had a part in it seems amply suggested by the evidence and hence to warrant submitting the issue of his guilt or innocence to the jury.

Error is alleged in allowing the Commonwealth to use gruesome colored slides of the bruised deceased. Pictures may not be excluded merely because they are horrid, but they should not be overused and they should have a purpose, such as to show the severity of the attack, as in *Commonwealth v. Buzard,* 365 Pa. 511 (1950), 76 A. 2d 394, or the kind of crime it was, as in *Commonwealth v. Novak,* 395 Pa. 199 (1959), 150 A. 2d 102. Here they could have shown bruises that

pointed to a forcible robbery and hence a felony murder. Since the case will be remanded, we are constrained to suggest that the pictures should not, if used, be put before the jury for so long a time. Out of four and a half days of trial, they were on exhibit for half a day, enlarged on a screen. Although they were being subjected to medical explanation, we regard the duration of their view as excessive. Such pictures may be used as a fine point of demonstration but not as a bludgeon for winning the case.

Complaint is also made that the court admitted evidence before the jury of the defendant's juvenile record, as well as a psychiatric report about him.

The case was tried before the Act of December 1, 1959, P. L. 1621, 18 PS §4701, and hence the errant evidence was presented to the jury as part of the Commonwealth's case in general. The juvenile court record was inadmissible under *Holmes' Appeal,* 379 Pa. 599 (1954), 109 A. 2d 523, where we pointed out that the Juvenile Court is not a criminal court; under *Commonwealth ex rel. Hendrickson v. Myers,* 393 Pa. 224 (1958), 144 A. 2d 367, where we referred to the informality and difference in procedure of the Juvenile Court; and also under the Act of June 2, 1933, P. L. 1433, §19, 11 PS §261. The Act reads: "No order made by any Juvenile Court shall operate to impose any of the civil disabilities ordinarily imposed by the criminal laws of the Commonwealth, nor shall any child be deemed to be a criminal by reason of any such order or be deemed to have been convicted of crime. The disposition of a child or any evidence given in a Juvenile Court shall not be admissible as evidence against the child in any case or proceeding in any other Court."

In *Hendrickson* we said: "Generally speaking, there are several cogent reasons why juvenile records and evidence given in juvenile proceedings should not be used as evidence against a child in any case or pro-

ceeding in any other court. Juvenile Court proceedings are normally informal, and many of the important constitutional and statutory guarantees afforded a defendant in a criminal trial do not apply to a juvenile in a hearing before a Juvenile Court: Holmes' Appeal, 379 Pa. 599, 109 A. 2d 523. For these reasons, it would be unjust and illegal to allow the introduction of juvenile records or evidence given in juvenile cases to be later introduced as competent evidence in criminal cases or proceedings in any other court, in the same manner as criminal convictions or evidence taken in criminal proceedings may in certain instances be competent evidence in other criminal proceedings."

As for the psychiatric report, represented by the testimony of Dr. Torney, it was obviously inadmissible. The distinction from *Commonwealth v. Green,* 396 Pa. 137 (1959), 151 A. 2d 241; *Commonwealth v. Cater,* 396 Pa. 172 (1959), 152 A. 2d 259; and *Commonwealth ex rel. Hendrickson v. Myers,* supra (393 Pa. 224), is apparent. Those cases involved the assessment of penalty by a three-judge court on a plea of guilty, not by a jury, as here, on an adversary trial. And *Commonwealth v. Thompson,* 389 Pa. 382 (1957), 133 A. 2d 207, involved the admission, which we upheld, of the record of a court martial showing conviction.

As an example of what the testimony of Dr. Torney included, there is the witness saying: "He is competent to differentiate the difference between right and wrong." This was in the Commonwealth's case, before it could know the nature of the defense, if any. Sanity is presumed until put in issue by the defendant: *Commonwealth v. Carluccetti,* 369 Pa. 190 (1952), 85 A. 2d 391; *Commonwealth v. Iacobino,* 319 Pa. 65 (1935), 178 A. 823. And in *Commonwealth v. Morrison,* 266 Pa. 223 (1920), 109 A. 878, we said: "The Commonwealth cannot undertake the burden of showing a sound mind when it does not know the nature of the defense,

and can become acquainted with it only when offered. Countervailing evidence can then be offered solely by way of rebuttal." Hence the psychiatric evidence, apart from being generally inadmissible, was specifically erroneous.

The failure of counsel to object because he thought, with the trial judge, that *Green* and *Cater* qualified and even required the disputed evidence, is unimportant, as the point is as basic as can be imagined.

The judgment is reversed and a new trial granted.

---

Concurring Opinion by Mr. Justice Musmanno:

I concur in the decision of the Court and express gratification that this Court has condemned the inordinate use of lurid and grewsome pictures in homicide cases. I have filed several dissenting opinions in other cases protesting the use of photographs whose only purpose can be to prejudicially inflame the jury against the defendant on something entirely disassociated from the oral testimony as to what occurred.*

The Majority Opinion here, in properly censuring the enlargement and screen projection for a half day of repellent pictures in the court below, says that "we regard the duration of their view as excessive." It does not say *how* excessive. I fear that under this general language the Trial Court at the new trial may be authorized to exhibit the pictures for any unit of time less than a half day.

I don't believe the pictures should be shown to the jury at all unless they supply an indispensable link in the chain of evidence inculpating the defendant. In any event, there is no reason why the photographs should be allowed for any period which exceeds the time required for an intelligent person to grasp the

---

* *Com. v. Boden*, 399 Pa. 298; *Com. v. Clanton*, 395 Pa. 521; *Com. v. Novak*, 395 Pa. 199; *Com. v. Moon*, 389 Pa. 304.

significance of what is pictorially portrayed. Pictures, if used at all, are to inform, and not to emotionally stir, much less to twist judgment into a verdict which may be based on bias, hatred, or revenge.