331 A.2d 186

**COMMONWEALTH of Pennsylvania**

v.

**Regina GARRISON, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 11, 1974.

Decided Jan. 27, 1975.

Rehearing Denied Feb. 7, 1975.

---

Gilbert E. Toll, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Benjamin H. Levintow, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Regina Garrison, was indicted and charged with the murder of Henrietta Garrison, the appellant's mother. Prior to trial appellant filed a motion to suppress which was denied. Thereafter, trial was had before a judge and jury, at the conclusion of which, the ap-

pellant was found guilty of murder in the first degree. Motions for a new trial and in arrest of judgment were argued and denied and a sentence of life imprisonment was imposed.

The principal objection relates to the introduction into evidence over the objection of the defense of eleven color slides of the body of the deceased. We believe the admission of this evidence was error and now reverse.[1]

We recently set forth the controlling law in this area in our opinion in *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974) :

> "At the outset it should be noted that the practice of admitting photographs of the body of the deceased, unless they have essential evidentiary value, is condemned. *Commonwealth v. Peyton*, 360 Pa. 441, 450, 62 A.2d 37, 41 (1948). See also, *Commonwealth v. Dankel*, 450 Pa. 437, 441, 301 A.2d 365, 367 (1973). Our law is well-settled that the admission of such evidence is a matter within the discretion of the trial judge and, absent an abuse of discretion, there is no reversible error. *Commonwealth v. Woods*, 454 Pa. 250, 252, 311 A.2d 582, 583 (1973), citing *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (1962).

> " 'The proper test to be applied by the trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.' *Commonwealth v. Powell*, 428 Pa. 275, 278–279, 241 A.2d 119, 121 (1968). Such photographs will not be excluded merely because they are horrid or gruesome, *Commonwealth v. Snyder*, 408 Pa. 253, 257, 182 A.2d 495, 496 (1962), but the more inflammatory the photograph the greater the need to es-

1. In view of our disposition of this issue, we need not consider the other objections raised in this appeal.

tablish the essential evidentiary value." Id. at 381, 317 A.2d at 226.

The color slides in issue involved two photographs of the bedroom and bedding covered with blood; five photographs of the deceased on the floor of her bedroom immersed in a pool of blood with blood splattered on the surrounding furnishings; a view of the lacerated left side of the deceased's head in a pool of blood; two photographs of the deceased's head showing blood, as well as fragments of bone and brain tissue protruding from a gaping wound of the deceased's head; and one frontal photograph of the deceased nude from the waist up. The total viewing time was between three and four minutes.

Unquestionably, the photographs depicted a gruesome and macabre scene which would incite and inflame the passions of a jury. Thus, we must determine whether the evidentiary value of this evidence justified its introduction into evidence. See *Commonwealth v. Petrakovich*, Pa., 329 A.2d 844 (1974) [Filed December 5, 1974]. In the instant case, the defense raised was that of insanity. During the trial, appellant's written confession was introduced which graphically illustrated a premeditated, calculated and deliberate murder of her mother.[2] At no

2. In her statement, the following appears:
    "I then went upstairs with the blackjack and my gloves and went into the bathroom to get up my nerve. I stayed in the bathroom about ten minutes, and smoked a cigarette. And then I went into her bedroom. And she was laying on the bed. She was snoring. I asked her to get under the covers but she did not answer me or move. I put the blackjack to her head to see where I was going to hit her. But I just didn't know, and I didn't do nothing.
    I went back downstairs to think about it some more.
    I went upstairs about 3:15 A.M. and I went into her room, put on the light, looked out the window and said to myself that I was not going to think about it any more. So I did it.
    Q What did you do?
    A I hit her on the head. And she got up in a sitting position on the bed. And she said to me, 'whoever or whatever you are, mister, I'm going, I'm going'.
    I laid her back down on the bed and hit her on the ear. And I kept hitting her on the head. And somehow we ended up on the

point was the cause of death contested and the nature of the injuries were such as could be adequately described verbally by the pathologist. Further, the content of the slides sheds little, if any, light on the question of the state of mind of the accused which was the only issue before the jury.

Whether the purpose of the evidence was as asserted by the court en banc to illuminate the testimony of the pathologist or as suggested by the court in its charge to the jury to assist the jury in making a finding of a specific intent to kill, it is quite apparent that it sheds little light under either theory.

> "The picture of one in death, particularly if the death resulted from violent means, can never be expected to be an aesthetic or pleasant vision". *Commonwealth v. Sullivan*, 446 Pa. 419, 435, 286 A.2d 898, 904 (1971). (Opinion in Support of Affirmance).

*Commonwealth v. Johnson*, 402 Pa. 479, 167 A.2d 511 (1961); *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (1962). This was particularly true in the instant case where death resulted from numerous blows to the head. Matricide by its very nature is a horrendous crime and the introduction of these photographs could

---

floor. *I sat on the bed and kept hitting her and hitting her and hitting her until my arm got tired, and then I used the other one. I kept thinking about all the wrong she did to me. While I was hitting her she said, 'Wait a minute, my nose is bleeding' but I did not stop. I just thought of my freedom and kept hitting her. And every time I would hit her she would jump. And she would not stop breathing. And I said, 'I'm going to let her bleed to death and let her suffer just like me.'*"

"Q  How many times did you hit your mother with the blackjack?
A  About twenty or thirty times.
Q  Why did you hit her so many times?
A  Because the fool would not stop breathing.
Q  Are you saying that you were trying to kill her?
A  I sure was. I wasn't doing it for exercise.
Q  When did you first decide to use the blackjack to kill her?
A  The day before, Friday."

only have further incited the emotions of the jury and diminished their ability to return a deliberate and objective verdict. Whereas here there was an absence of any compelling reason for the admission of these slides, we are forced to conclude that their introduction was error. Further, we cannot accept the Commonwealth's argument that the cautionary instructions of the court relating to this evidence or the limitation placed upon the viewing time adequately assured against the prejudice created. It is unrealistic to believe, even after a limited view, that the horror engendered by these slides could ever be erased from the minds of the jurors or that its prejudicial effect could be avoided by cautionary instructions.

We thus find an absence of any need that would justify the introduction of such inflammatory material and conclude the trial court abused its discretion in permitting its introduction into evidence.

Judgment of sentence is reversed.

MANDERINO, J., concurs in the result.