345 A.2d 691
**COMMONWEALTH of Pennsylvania**
v.
**Domingo GONZALES, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 1974.

Decided Oct. 3, 1975.

598

———◆———

Robert E. Campbell, Public Defender, Gettysburg, for appellant.

Oscar F. Spicer, Gettysburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Domingo Gonzales, was found guilty by a jury of voluntary manslaughter under section 2503 of the Crimes Code, 18 C.P.S.A. § 2503 (1973) stemming from an indictment charging criminal homicide and aggravated assault. Post-trial motions were denied and a sentence of 2½ to 10 years imprisonment was imposed. This direct appeal followed.

Appellant first raises a question as to the sufficiency of the evidence to support the verdict. The testimony presented at trial revealed that there had been an altercation between appellant and decedent at the migrant labor camp where each man worked and lived. Although there were no witnesses to the actual shooting, appellant did not contest that he fired the fatal shot. Appellant contended that the shooting was in self-defense and that it occurred as the victim approached him with a knife. The Commonwealth's evidence indicated that the fatal bullet was fired from a distance of at least 12 feet, and no knife was located at the scene of the incident.

Appellant contends that under the testimony, the only theory that would justify the manslaughter verdict would have been a finding that he had acted under

an unreasonable belief that the killing was justifiable.[1] Proceeding from this premise he submits that the evidence establishes as a matter of law that his belief that he was in imminent danger of serious bodily harm was reasonable. Even accepting the original assumption, we cannot agree with this view of the testimony. The only evidence supportive of a theory of self-defense was the testimony of appellant which the jury was free to reject. *Commonwealth v. Mahoney,* 460 Pa. 201, 331 A.2d 488 (1975); *Commonwealth v. Williams,* 450 Pa. 158, 299 A. 2d 643 (1973). Contradicting this testimony was the expert opinion that the bullet entered the body of the deceased at a point when it was at least 12 feet from the muzzle of the weapon. Additionally, no knife was found on the body nor was one retrieved from the area. This testimony obviously precludes a finding of self-defense as a matter of law and requires that the issue be submitted to the trier of fact as was done in this case. Reviewing the evidence in a light most favorable to the verdict winner, we find that the evidence supported the verdict. *Commonwealth v. Pride,* 450 Pa. 557, 301 A.2d 582 (1973).

Appellant next contends that a conflict in the testimony of the Commonwealth's expert witnesses regarding the ability to determine the distance from which the fatal shot was fired rendered such testimony inadmissible. Appellant bases this contention on the rule that the jury should not be required to guess between contradictory expert evidence offered by the same party. *Menarde v. Phila. Transp. Co.,* 376 Pa. 497, 501, 103 A. 2d 681, 684 (1954); *Mudano v. Phila. Rapid Transit Co.,* 289 Pa. 51, 60, 61, 137 A. 104, 107, 108 (1927).

1. The basis for this assumption is clearly open to question in view of the evidence of an altercation preceding the homicide which could have also supported a finding of a killing in the heat of passion.

■ While this is a correct statement of the law, we must agree with the trial judge's determination that in this case no conflict existed among the testimony of the Commonwealth's two witnesses, one a police ballistics expert and the other, the county coroner (a medical doctor), who examined the decedent a few hours after death. At trial the ballistics expert testified that if the bullet hit the arm and then penetrated the abdomen his ability to compare the wound with the test shots performed on the murder weapon to determine the firing distance would be affected. Defense counsel's objection to this witness' opinion testimony regarding distance was sustained. In contrast the coroner was permitted to testify based on his familiarity with shotgun patterns and shotgun wounds and his examination of this wound and the residue, that the weapon was fired from a distance of about 12 feet. When questioned regarding deflection of the shot by the arm he stated that there was no deflection of the mass of the charge. Thus no conflict existed because the ballistics expert testified simply as to how deflection would affect his opinion, whereas the doctor testified that in this case no deflection occurred.

■ Appellant further contends that the doctor, while qualified as to medical matters, was not properly qualified to testify regarding ballistics, specifically the distance from which the shot was fired. The reasons which appellant assigns to support this contention are that the doctor examined decedent only after surgery, that he had no particular experience with deflected shots, and that there were no additional facts such as powder burns upon which to base his opinion. These contentions, however, go principally to the weight the jury may give to the testimony rather than to its admissibility. In the past, this Court has permitted a medical doctor, based on his examination of the wound, to give his opinion regarding the distance from which the shot was fired. See

*Commonwealth v. Santos,* 275 Pa. 515, 119 A. 596 (1923). In that case this Court stated:

"The weight of authority seems to be that the examining physician . . . may give his views both as to direction and distance of the shot, as well as the position of the parties . . . [citing cases] . . . ; but . . . those courts . . . recognize that it is the province of the jury to determine what weight shall be given to such opinion evidence. . . ." *Id.* at 527, 119 A.2d 601.

Here the doctor had a familiarity with the ballistics of a shotgun and had viewed the residue of the shots in the wound. In our view the trial judge properly ruled in permitting the introduction of this testimony.

Appellant next contends that it was error to admit X-ray photographs depicting the wounds which the victim sustained and that, once admitted, cautionary instructions should have been given.

Clearly the admission of photographs of the deceased is a matter within the sound discretion of the trial judge which will not be reversed absent an abuse of discretion. *Commonwealth v. Garrison,* 459 Pa. 664, 665–666, 331 A.2d 186, 187 (1975); *Commonwealth v. Woods,* 454 Pa. 250, 252, 311 A.2d 582, 583 (1973); *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A.2d 421 (1962). It has long been the law that the proper test to be applied in such cases is whether the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Garrison, supra,* 459 Pa. at 667–668, 331 A.2d at 187; *Commonwealth v. Scaramuzzino,* 455 Pa. 378, 381, 317 A.2d 225, 226 (1974); *Commonwealth v. Powell,* 428 Pa. 275, 278–79, 241 A.2d 119, 121 (1968); see also *Commonwealth v. Irwin,* 460 Pa. 296, 333 A.2d 735 (1975); *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1975). The

more inflammatory the photograph the greater the need to establish its essential evidentiary value. *Commonwealth v. Garrison, supra,* 459 Pa. at 667, 331 A.2d at 187.

Under this test the X-ray photographs at issue were properly admitted. Not only were they of essential evidentiary value in order to defeat defense counsel's claim that the shot was deflected by the arm, but, as black and white X-rays which are not at all gruesome, they were hardly likely to inflame the minds and passions of the jurors.

Moreover, at no time during trial or the judge's charge did appellant request that cautionary instructions regarding the X-ray photographs be given. The failure to give cautionary instructions was also not directly attacked on post-trial motions. Accordingly, this objection is waived. *Commonwealth v. Bronaugh,* 459 Pa. 634, 331 A.2d 171 (1975) and cases cited; see also *Commonwealth v. Ehly,* 457 Pa. 225, 319 A.2d 167 (1974).

Finally, appellant attacks the constitutionality of the voluntary manslaughter statute, 18 C.P.S.A. § 2503. That statute provides:

"§ 2503.  *Voluntary manslaughter*

*(a) General rule.*—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

*(b) Unreasonable belief killing justifiable.*—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the

killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.

*(c) Grading.*—Voluntary manslaughter is a felony of the second degree."

Act of December 6, 1972, P.L. 1641, No. 334, § 1, 18 C.P.S.A. § 2503.

Appellant claims that 1) Part b of the statute is so vague and indefinite in its terms as to violate due process of law because an individual in danger of great bodily harm cannot know what would later be considered "reasonable" by a jury, and 2) the statute violates due process because it permits the return of a verdict under two different theories of criminal liability without requiring specification of the theory upon which the verdict is based. These arguments are without merit. First, appellant does not deny that Part b of the statute is merely a recent codification of prior law which has been used and approved in this jurisdiction without problem in its implementation for many years. See *Commonwealth v. Pride, supra.* See also *Commonwealth v. Miller,* 313 Pa. 567, 170 A. 128 (1934) and *Commonwealth v. Mitchell,* 181 Pa.Super. 225, 124 A.2d 407 (1956). Moreover, this claim seems frivolous in that a jury's hindsight determination of the reasonableness of an actor's conduct is employed in many areas of our law.

Appellant, by his second contention would require us to hold that special verdicts may be had by right in criminal cases. However, our Rules of Criminal Procedure do not provide for Special Verdicts in Criminal Cases. See Pa.R.Crim.P. 1120.

Judgment of sentence affirmed.

EAGEN, ROBERTS and MANDERINO, JJ., concur in the result.