## Commonwealth v. Lewis

Before Pinola, P. J., Lewis, Brominski, Bigelow and Schiffman, JJ.

*Stephen A. Teller*, District Attorney, and *Ivo V. Giannini*, First Assistant District Attorney, for Commonwealth.

*Joseph J. Gale*, for defendant.

BROMINSKI, J., September 16, 1963.—This matter comes before the court upon defendant's motion in arrest of judgment. Defendant had filed simultaneously

therewith a motion for a new trial, but indicated at argument that he was pursuing only the motion in arrest of judgment. Said motion advances two reasons:

1. Evidence was insufficient to sustain the verdict of the jury.

2. Defendant was convicted of an offense of which he could not be convicted under all of the evidence presented in this case and applicable rules of criminal law and procedure in the Commonwealth of Pennsylvania.

Defendant, William Lewis, was indicted for the following:

First Count—Murder

Second Count—Manslaughter

After trial by jury, the jury returned a verdict of guilty of manslaughter.

The theory upon which the Commonwealth endeavored to convict defendant of murder was that defendant, 20 years and 11 months of age, in an attempt to rape deceased, Jean Valukonis, age 14, caused her death as she fled from the scene and fell over a mountainside; that is, felony-murder.

Since both reasons advanced by defendant in his motion in arrest of judgment are necessarily intertwined, it might be well to first cite some of the applicable law relevant hereto prior to a review of the facts.

The Honorable Supreme Court of the Commonwealth of Pennsylvania enunciated in Commonwealth v. Kellyon, 278 Pa. 59, 63:

"It is deemed to be wholly within the province of the jury to fix the punishment; and even though the evidence may fully disclose that the defendant was guilty of a higher degree than that found against him still the verdict cannot be disturbed for that reason. The courts recognize that it is not an uncommon thing for a jury, out of sympathy, or what they conceive to be extenuating circumstances, to find a defendant guilty of a lower

degree or grade of offense than that of which the evidence clearly convicts him; but the fact that they do so is not a ground of reversal of the verdict and judgment. Accordingly, the jury under an indictment of murder may find a verdict for [voluntary] manslaughter."

In 1963, in Commonwealth v. Frazier, 411 Pa. 195, 202, the Supreme Court again held steadfast to that position when it pronounced:

"While in view of the evidence, the verdict of voluntary manslaughter is difficult to understand, such a verdict is strictly within the jury's prerogative, and may be returned even in the absence of evidence of sufficient provocation and passion if the evidence as a whole is sufficient to warrant the defendant's conviction of murder."

Thus if the record as a whole would support a finding of murder, even in the absence of provocation and passion, two essential elements of the crime of voluntary manslaughter, the verdict of manslaughter is proper.

Let us then turn to the record to examine whether the record could support a verdict of murder.

The Penal Code of June 24, 1939, P. L. 872, sec. 701, as amended, defines murder as follows:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree . . .": 18 PS §4701.

Rape or attempt to rape in felony-murder includes both forcible and statutory rape: Commonwealth v. Capps, 382 Pa. 72. It is also germane that the killing may be unintentional or even accidental; still defendant is, nevertheless, guilty of first degree murder: Commonwealth v. Lessner, 274 Pa. 108; Commonwealth v. Sterling, 314 Pa. 76; Commonwealth v.

Stelma, 327 Pa. 317. Further, in examining the felony-murder doctrine, the thing which is imputed to the felon for a killing incidental to his felony is malice and not the act of killing. Finally:

"In passing upon a motion in arrest of judgment under the Act of June 15, 1951, P. L. 585, 19 PS §871, we are required to test the sufficiency of the evidence to sustain the conviction by considering the entire record, viewing the same in the light most favorable to the verdict: Commonwealth v. Boden, 399 Pa. 298, 301; Commonwealth v. Mitchell, 181 Pa. Superior Ct. 225, 227": Commonwealth v. Kelly, 26 D· & C. 2d 225, 229, affirmed per curiam in 196 Pa. Superior Ct. 265.

Turning now to the record, the circumstances leading to and surrounding the killing are as follows: On July 13, 1962, defendant, in the company of other young men and women, congregated at the home of one Joseph Klinetob, West Nanticoke, Luzerne County, Pa. His parents were out of town and beer was available. Defendant, upon arrival at the house, bodily carried Ann Klinetob upstairs, despite her protestations, and forcibly had intercourse with her, which he denied. Because of the confusion, someone suggested that they shout that the police were coming in order to disperse the group. In departing from the home, defendant, along with William Shirk and one Arthur Brown, in company with deceased, Jean Valukonis, ran to the woods in the rear of the house onto a path and proceeded farther into the woods stopping intermittently to catch their breaths. Along the route, Arthur Brown left them, and ultimately, William Shirk, William Lewis, defendant, and Jean Valukonis, deceased, came to rest at a large rock. This was approximately midnight. While at the rock the three sat in close proximity to each other and defendant nudged Shirk with his elbow and Shirk moved away. Shirk fell asleep and was awakened when the deceased fell over his legs. He

then saw defendant lift the deceased to the ground and she was screaming "don't make me do it." Defendant then swung at her in a backhand motion and he struck her and she raised her arms in front of her to protect herself and she sounded as though she were crying. That the deceased bit defendant on the arm during the scuffle; that defendant said to decedent, "you had it before" and decedent replied: "don't make me do it"; that defendant held decedent's wrist while defendant looked for his wallet and comb which were lost from defendant's rear pants pocket during the incident; while decedent's wrist was being held, she wrenched herself away and ran toward the edge of the rock. This testimony is that which was given primarily by William Shirk, N. T. page 210, et seq.

It is also of record that defendant's statement elicited by the Pennsylvania State Police at the Wyoming Barracks, Wyoming, Luzerne County, Pa., reveals the following:

"I put my hand on her breast and down on her jeans—on the ————." (N. T. page 314) It reveals further that defendant got decedent to the ground and she was attempting to fight him off. That he had his hand by her pants but never got them off. At page 315 of the record, his statement reveals that it was his intent to rape decedent. It is clear that defendant did not rape the deceased. However, it is equally clear that there is ample evidence to sustain the conclusion that defendant attempted to rape the deceased. In any event since the term rape, as used in the felony-murder doctrine, includes statutory rape, there was an obvious attempt by defendant to commit statutory rape. See Commonwealth v. Capps, supra.

After the deceased tore herself from the clutch of defendant, she then ran to the edge of the rock which leads downward to several steep precipices and leads

directly to a drop-off of 84 feet. Her body was found 52 feet from the base of the cliff. Between the base of the cliff and the point where the body was located, vomitus and blood were found. The pathologist testified that the cause of death was due to a fracture of the skull accompanied by damage to the brain and this was caused by a broad blunt blow to the left side of her body.

Thus it appears that as a result of the attempted rape the deceased broke away from defendant and fell over the 84-foot precipice suffering therefrom a fractured skull which resulted in her death·

This amply supports the finding that deceased's death resulted from defendant's attempt to rape her, which clearly falls within the theory of the felony-murder doctrine as discussed previously herein, and since the evidence supports the possible verdict of murder, the jury's verdict of manslaughter was proper and must be sustained. See Commonwealth v. Frazier, supra.

And now, September 16, 1963, at 9:10 a.m. (EDT), defendant's motion in arrest of judgment is hereby denied and dismissed and defendant is directed to report for sentencing on September 30, 1963, at 2 p.m. (EDT), in court room no. 3, Luzerne County Court House, Wilkes-Barre, Pa.