# Commonwealth v. Emmett and Middlecamp, Appellants.

*Criminal law—Accomplice—Evidence.*

On the trial of an indictment for arson, the court is not bound to instruct the jury to acquit the defendant, where the Commonwealth relies on the testimony of an accomplice alone, but it is proper for the jury to be advised that it is not safe to convict the defendant upon the uncorroborated testimony of an accomplice. The corroboration should be to the person of the accused and not simply to the fact of the crime.

*Criminal law—Evidence—Cross-examination.*

On the trial of an indictment for arson, where the Commonwealth relies largely upon the evidence of a particular witness, who was also an accomplice, such a witness may be asked on cross-examination, for the purpose of showing motive and impeaching his credibility, whether or not he hated the defendant, and whether or not he had ever made any threats concerning him.

86, (1920).] Syllabus—Assignment of Errors.

A wide latitude is allowed in the cross-examination of an accomplice and the most searching question is permitted in order to test his veracity.

*Expert testimony—Cause of conflagration—Admissibility.*

Testimony of expert witnesses, called for the purpose of discrediting a witness for the Commonwealth as to the manner in which a fire was started, is admissible in answer to a hypothetical question, supported by the evidence introduced at the trial. The objection that such a question was leading is without merit.

Expert testimony that gasoline was not explosive, under the conditions shown by the Commonwealth's evidence, was both relevant and important, and the defendants were entitled to the testimony of the expert, for the purpose of weakening, to that extent, the force of the evidence for the prosecution.

*Criminal law—Separate trials—Discretion of court.*

An application for a separate trial of two defendants is addressed to the discretion of the court, and is not subject to review except upon proof of gross abuse of discretion.

Argued March 9, 1920. Appeal, No. 182, Oct. T., 1919, by defendants, from judgment of O. and T. Lehigh County, June Sessions, 1919, No. 71, on a verdict of guilty in the case of Commonwealth of Pennsylvania v. Frank Emmett and Roy W. Middlecamp. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Indictment for arson. Before GROMAN, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed. Defendants appealed.

*Errors assigned* were refusal to grant a severance, various rulings on evidence, the charge of the court and refusal to direct a verdict in favor of the defendants.

*Lawrence H. Rupp,* and with him *Dallas Dillinger,* for appellants.—Whatever tended to show the interest or feeling of the witness in the case was competent by way

of cross-examination: Com. v. Farrell, 187 Pa. 423; Com. v. Kilrow, 89 Pa. 485; Clark v. Church, 5 W. & S. 266.

*Thomas F. Diefenderfer,* Attorney for State Fire Marshall, and with him *Richard W. Iobst,* District Attorney, for appellee.

OPINION BY HENDERSON, J., April 24, 1920:

The appellant was convicted of arson. The Commonwealth charged that he caused a fire to be ignited in a building used as a theater from which fire was communicated to an adjoining dwelling house. The fire occurred May 13, 1916. The defendants were indicted June 24, 1919. Frank Emmett was the lessee of the theater and of another which he conducted in the same city. The Commonwealth undertook to show that the fire was started by Middlecamp and one, Wernett, at the instigation of Emmett, and in support of the charge Wernett was called as a witness for the prosecution. He testified that he was in the employ of Emmett, and that he was at the theater about twenty minutes after ten in the evening and went to the booth occupied by Middlecamp who had charge of the machine used to produce pictures on the screen, at which time an exhibition was in progress; soon afterward the witness went back of the stage; about five minutes after the show was over Emmett came to the same place and said to him: "I hope you'll make a good job of it this time"; at the same time he paid him wages due; Emmett then left; about five minutes later Middlecamp appeared at the stage with a "trailer" and a bottle of gasoline. The trailer was described as a piece of paper soaked in coal oil and twisted. While the witness sat down and watched him, Middlecamp put the trailer down, poured the gasoline out and lighted a match; an explosion occurred which knocked Middlecamp off his feet on his back and he lay there about two or three minutes, when he got up and

grabbed Wernett and went to the side of the stage and out of the building. Other evidence was offered intended to corroborate Wernett. This consisted principally of the statement of Charles Breyfogel to the effect that he had a conversation with Emmett on Saturday or Monday before the fire; that the latter told him Middlecamp and Wernett were going to burn down the theater Saturday night after the show. The witness was working for Emmett and was engaged at the time of the conversation in cleaning the seats in the theater which was burned. The other evidence related to collateral matters or to subjects not bearing directly on the guilt of the defendants.

At the trial and before the empaneling of the jury application was made for a separate trial on behalf of each of the defendants on the ground that a joint trial would be prejudicial to them. This application was refused by the court. The first assignment relates to this refusal. The other assignments refer mainly to errors alleged in the admission and rejection of evidence. With respect to the first it is sufficient to say that a severance was entirely within the discretion of the court and is not the subject of review here unless perhaps in case of a gross abuse of discretion: Commonwealth v. Place, 153 Pa. 314. The examination of the evidence convinces us the defendants were not prejudiced by the joint trial. It is unnecessary to consider each of the numerous complaints brought to our attention. Many of them relate to unimportant matters which could not have harmed the appellant. Others which are of consequence we will consider in their order. Frank Wernett, the principal witness for the Commonwealth was a confessed accomplice. After he had testified to the connection of Frank Emmett with the crime charged, the counsel for the defendants proposed to show ill feeling on the part of the witness against Emmett, and propounded this question, "Do you hate Frank Emmett?" This was objected to on behalf of the Commonwealth and the objection was sus-

tained. The question was followed by another, "Have you ever made any threats concerning Emmett?" This was objected to and the objection sustained. Other questions followed by which it was proposed to show that the witness had had disputes with Emmett and had been discharged by him; all of which inquiries were excluded by the court. When it is considered that the Commonwealth's case depended on the credit given to the witness, the relevancy of the inquiries tending to show ill will, bias and motive to affect his credibility is apparent. Whatever tends to show the interest or feel- ing of a witness is competent by way of cross-examina- tion: Commonwealth v. Farrell, 187 Pa. 423. A wide latitude is allowed in the cross-examination of an ac- complice and the most searching question is permitted in order to test his veracity: Lee v. State, 21 Ohio 151; Wharton's Crim. Ev. 9 Ed. Par. 444; Com. v. Kilrow, 89 Pa. 480; Com. v. Simon, 44 Pa. Superior Ct. 538. It was of the utmost importance to the defense that the principal witness for the Commonwealth be discredited and it was entirely within the range of relevancy and competency to obtain from him an admission of ill will toward one or both of the accused. The court was in error, therefore, in refusing the questions propounded as set forth in the ninth, tenth, and seventeenth assign- ments of error.

For the purpose of discrediting the testimony of Wer- nett as to the manner in which the fire was started, J. S. Carlitz was called as a chemical expert. He testified as to his knowledge of the composition of gasoline, that he had made a study of explosives and that he was quali- fied to state from his experience what the result will be under given conditions if fire be applied to gasoline. He was interrogated as to the effect of fire on gasoline poured out as described by Wernett and whether an ex- plosion could be produced in that way which would throw a man on his back and cause him to lie two or three minutes. The witness said it would be absolutely

impossible as described by Wernett. This evidence was objected to by the Commonwealth on the ground that the witness was not the judge of anybody's testimony whereupon the evidence was stricken out by the court and the jury instructed to ignore the answer of the witness so far as the expression of an opinion was concerned. The counsel for the prosecution then renewed the question to which objection was made for the further reason that the question implies a conclusion as to the testimony of some witness. This objection was sustained. It was not objected that the hypothetical case was not supported by the evidence introduced by the Commonwealth and the question was competent in corroboration of the evidence of the defendants that the testimony of Wernett as to the manner in which the fire was started was not true. The objection that the question was leading and based on a conclusion could not properly have been sustained. Generally speaking hypothetical questions are leading and assume a state of facts exhibited by evidence already introduced. The effort to show that gasoline was not explosive under the conditions shown by the Commonwealth's evidence was both relevant and important, and the defendants were entitled to the testimony of the expert for the purpose of weakening to that extent the force of the evidence for the prosecution. The twenty-fifth, twenty-sixth and twenty-seventh assignments relating to this evidence are sustained.

In the thirty-first assignment complaint is made that the court refused to direct a verdict for the defendants. This was evidently based on the assumption that a conviction should not be had on the uncorroborated testimony of an accomplice. It is the practice of courts to admonish the jury of the danger of a conviction on the testimony of an accomplice and to advise against it unless he is corroborated to some extent, but no case has been brought to our attention in which a verdict has been directed by the court for such a reason. A remedy is open to the accused by a motion for a new trial where

there is a conviction in disregard of such instructions. The corroboration should be to the person of the accused and not simply to the fact of the crime. Corroboration in matters not connecting the accused with the offense would not meet the requirement. A number of assignments relate to occurrences in the trial not likely to reoccur and it is therefore unnecessary to make special reference to them.

The judgment is reversed with a venire facias de novo.