364 A.2d 274

**COMMONWEALTH of Pennsylvania**

v.

**Dennis M. VOGEL, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1976.

Decided Oct. 8, 1976.

440

Saxton, McKnight & Roberts, Richard Saxton, Lock Haven, for appellant.

Allan W. Lugg, Lock Haven, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

On September 13, 1974, appellant, Dennis Vogel, was convicted by a jury of two counts of murder in the second degree and one count of armed robbery.[1] The Court of Common Pleas, Clinton County, Criminal Division, Judge Lipez specially presiding, sentenced appellant to serve two consecutive prison terms of not less than ten

---

1. This was appellant's third trial on the murder and armed robbery charges. Following his arrest in August of 1962, Vogel was committed to a state mental institution after a judicial determination was made that he was incompetent to stand trial. His first trial was not until February of 1968 and resulted in a jury verdict of guilty of the crimes of murder in the second degree (two counts) and robbery (one count). On appeal, this Court reversed per curiam the judgments of sentence and ordered a new trial. *Commonwealth v. Vogel*, 440 Pa. 1, 268 A.2d 89 (1970). Appellant was convicted for a second time by a jury following his retrial in February of 1971. This Court affirmed the Order of the Court of Common Pleas, Clinton County, granting appellant's post-trial motion for a new trial. *Commonwealth v. Vogel*, 458 Pa. 200, 321 A.2d 633 (1974).

years nor more than twenty years for the murder convictions and thereafter to serve from one day to ten years imprisonment on the armed robbery count. Following the denial of post-trial motions, appellant filed the instant appeal.[2]

At issue is the propriety of the lower court's decision to admit, over defense counsel's objection, the expert testimony of Dr. Daniel W. Schwartz, a psychiatrist, who testified in rebuttal as to appellant's mental condition at the time of the commission of the crime. Intricately tied to appellant's argument that Dr. Schwartz's testimony should have been excluded for failure to meet the proper evidentiary standard of certainty, is the second argument advanced by appellant that the lower court abused its discretion in denying a new trial on the grounds that the jury verdict of guilty was against the weight of the evidence. Lastly, appellant urges that the admission of certain photographs depicting the victims as discovered by police was prejudicial error requiring the grant of a new trial. We shall discuss these three issues seriatim.

First, however, a brief factual history is warranted. On Wednesday, August 1, 1962, police responding to an emergency call, arrived at the W. T. Grant store located in Lock Haven, Pennsylvania, and discovered in the basement of the store the fatally wounded bodies of two employees, a Mr. Donald Atwood and a Mrs. Shirley Rechel. Both had been shot with a .22 caliber revolver several times. Upstairs, in the manager's office, police found the door to the safe open and its contents missing. Mr. Atwood was the store's office manager and Mrs. Rechel was his secretary.

Appellant Vogel was also employed by Grant's at the time, carrying out the duties of stock attendant and general maintenance worker. Although Vogel was on vacation from work, police investigation revealed that he had

2. This Court has jurisdiction pursuant to the Act of 1970, July 31, P.L. 673, No. 223, Article II, 202(1); 17 P.S. Section 211.202(1).

been seen in the store earlier that day by a customer and was also seen by other people interviewed. Upon learning that Vogel had left later that afternoon with his wife and child on a car trip to Canada, Pennsylvania police sent out a teletype bulletin which was picked up by Canadian border authorities. Appellant was arrested in Ontario and returned to this jurisdiction after waiving extradition. Pursuant to a search warrant, officials discovered money and other items missing from the Grant store in the trunk of appellant's car.

Appellant did not deny killing Atwood and Rechel; however, his asserted defense to the crimes for which he was tried was that of not guilty by reason of insanity.

The Commonwealth sought to prove through the testimony of a variety of witnesses that the appellant planned the robbery of the Grant store well in advance of August 1; that he knew Grant's was closed to customer business regularly on Wednesday afternoons; that he was heavily in debt; that he deliberately lied to his ex-wife on the morning of August 1 as to the reason he was going into town; and that he planned to leave with his family for Canada immediately upon returning home on the afternoon of August 1 in order to avoid involvement in any police investigation of the crime. Appellant's ex-wife testified that he had warned her not to go near the trunk of the car on that Wednesday afternoon, giving the false excuse that she might overturn and damage a borrowed outboard motor he had placed in the trunk. In fact, there was no outboard motor in the trunk at all. Moreover, there was testimony given to the effect that appellant hated Atwood, his superior, and a pathologist further testified that powder burns around the bullet wound in Atwood's forehead indicated a killing at very close range.

Appellant's defense consisted of the testimony of his ex-wife to the effect that Vogel at times exhibited quite bizarre behavior and had sought psychiatric treatment.

Additionally, the defense presented the expert testimony of three highly qualified psychiatrists. Two of the doctors' professional contact with appellant began as early as August of 1962. The third psychiatrist examined Vogel first in 1968. Each doctor concluded that in their medical opinion, appellant Vogel was indeed legally insane on August 1, 1962.

In rebuttal, the Commonwealth offered the testimony of Dr. Daniel W. Schwartz who, based upon a hypothetical question consisting of those facts presented by the prosecution in its case in chief, concluded: *". . . with a reasonable degree of medical certainty,* at the time of the said offense, defendant was not suffering from mental illness or mental disease or defect that would prevent him from nor did it prevent him from knowing the nature and quality of his act or the natural consequences of the acts or of knowing right from wrong." (Emphasis added).

Appellant argues instantly that it was error for the trial court to have admitted the testimony of Dr. Schwartz, contending that where, in a criminal case, an expert opinion presented to establish an essential element of the prosecution's case is based only upon "a reasonable degree of medical certainty," such opinion is insufficient and hence should be excluded. In support of this position, appellant cites *Commonwealth v. Embry,* 441 Pa. 183, 272 A.2d 178 (1971). Appellant's argument, however, misperceives the focus of attention placed by this Court in reviewing *Embry,* a case where we were concerned with the sufficiency of the evidence on the record to sustain a guilty verdict rather than whether or not the pathologist's testimony in that case was admissible. *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976).

Clearly, a conviction will only be sustained where the Commonwealth has carried its burden of proving each essential element of the crime charged "beyond a

reasonable doubt." *See Commonwealth v. Webb,* 449 Pa. 490, 494, 296 A.2d 734, 737 (1972). We reversed the judgment of sentence in *Embry,* determining that there was insufficient evidence on the record to sustain the jury's verdict of guilty of murder in the first degree. The Commonwealth had offered as the sole proof of the cause of death of an elderly robbery victim, the expert opinion of a forensic pathologist. The doctor could not state that the victim's death was caused, beyond a reasonable doubt, by a criminal agency. 441 Pa. at 185, 272 A.2d at 179. In reversing, we stated: "Although it is hornbook law that a jury is never bound by an expert witness, when only one witness is presented by the Commonwealth to establish causation and that witness cannot do so beyond a reasonable doubt, a necessary element of the proof of that crime is missing." 441 Pa. at 186, 272 A.2d at 179.

Here, the decision of the trial judge to admit Dr. Schwartz's testimony in the first instance finds substantial support in the case of *Commonwealth v. Williams,* 455 Pa. 539, 316 A.2d 888 (1974). We noted in *Williams* that it was error for the trial judge to have excluded the testimony of a pathologist prepared to state "that in his opinion based on *a reasonable degree of medical certainty,* death was caused by burning and asphyxiation." (Emphasis added). 455 Pa. at 545, 316 A.2d at 891. Mr. Justice Nix, writing for the majority, explained:

"To permit evidence of a medical opinion as to cause of death to be considered by the trier of fact it must be shown only that the witness entertained a reasonable degree of medical certainty for his conclusions. The test of reasonable doubt is a legal one and it is the test that the jury must use in determining whether the expert opinion taken together with all of the other evidence in the case warrants the finding of the cause of death as suggested by the expert, beyond a reasonable

doubt. *Commonwealth v. Webb,* 449 Pa. 490, 496, 296 A.2d 734 (1972)."

455 Pa. at 545, 316 A.2d at 891.

In light of *Williams,* we hold that it was not error for the trial judge below to permit Dr. Schwartz to testify as to appellant Vogel's sanity on the date of August 1, 1962, even though the doctor's medical opinion was based upon "a reasonable degree of medical certainty," rather than the stricter standard used to justify a conviction; that is, "beyond a reasonable doubt."

Appellant goes on to argue that even if Dr. Schwartz's rebuttal testimony was admissible, when weighed against the quantity and quality of psychiatric evidence presented on behalf of the defense, there is insufficient evidence on the record to sustain the jury's verdict of guilty. To this end, appellant points out that Dr. Schwartz at no time ever interviewed the appellant personally, but formed his opinion in answer to the hypothetical question posed to him after solely reading appellant's medical reports and listening in court to the testimony of the three psychiatrists who appeared on behalf of the appellant. In contrast, appellant notes the eminent qualifications of the doctors who testified on his behalf. Heavily stressed is the fact that two of the doctors had personally interviewed the appellant as early as August of 1962 and had closely followed appellant's case from thereafter. The third doctor became professionally acquainted with the appellant in 1968 and held extensive interviews before arriving at his conclusion that on August 1, 1962, appellant Vogel was legally insane.

In reviewing the sufficiency of the evidence, our task on appeal is to determine "[w]hether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of

the crime or crimes of which he has been convicted." *Commonwealth v. Bayard,* 453 Pa. 506, 509, 309 A.2d 579, 581 (1973).

The thrust of the Commonwealth's case against appellant was directed toward proving that the robbery at Grant's was planned well in advance of August 1, 1962, and that appellant took very studied measures in preparation for the robbery and shootings as well as steps afterwards, all for the purpose of concealing his guilt. Dr. Schwartz's rebuttal testimony, although perhaps less weighty than had this witness formed his medical opinion after personally interviewing the appellant, buttressed the prosecution's position that appellant had the ability to appreciate the nature and quality of his actions and was able to comprehend right from wrong in the commission of the crime and hence should be held to bear the consequences. *See Commonwealth v. Woodhouse,* 401 Pa. 242, 164 A.2d 98 (1960).

That the defense presented the testimony of three expert witnesses and established that each doctor had had extensive personal contact with appellant prior to reaching their conclusions with respect to Vogel's sanity, as compared with the Commonwealth's one expert witness whose conclusions were reached absent a personal interview with Vogel, is of no moment. It is not uncommon for a properly qualified expert medical witness, offering an opinion on a person's mental condition, to do so upon the basis of a hypothetical question composed of the facts presented at trial. *Commonwealth v. Williams,* 307 Pa. 134, 146, 160 A. 602 (1932); *Commonwealth v. Emmett and Middlecamp,* 74 Pa.Super. 86, 91 (1920). *See also* Wharton's Criminal Evidence, Vol. III, § 609 at pp. 173–174 (13th Ed. 1973); 23 C.J.S. Criminal Law § 883 (1961).

■■ Moreover, while we believe psychiatric testimony to be of probative value, it is, in the end, within

the province of the factfinders to determine the credibility and weight to be accorded such evidence. *Commonwealth v. Demmitt,* 456 Pa. 475, 481, 321 A.2d 627, 631 (1974); *Commonwealth v. McCusker,* 448 Pa. 382, 391, 292 A.2d 286, 291 (1972). Evidence on a defendant's mental condition can just as credibly come from the testimony of lay witnesses "concerning the defendant's actions, conversations and statements at the time of the killing from which the jury could find that he knew what he was doing when he killed and knew it was wrong." *Commonwealth v. Demmitt, supra,* 456 Pa. at 483, 321 A.2d at 632; *Commonwealth v. Zlatovich,* 440 Pa. 388, 391, 269 A.2d 469, 471 (1970).

While there is a presumption of sanity which operates under our system of jurisprudence, once a defendant offers evidence of his insanity, the presumption falls aside and the Commonwealth has the burden of proving the defendant's sanity beyond a reasonable doubt. *Commonwealth v. Demmitt, supra,* 456 Pa. at 481, 321 A.2d at 631. As we stated in the *Demmitt* case, however: "The law in Pennsylvania is still the M'Naghten test. It is not intended to separate the emotionally disturbed defendants from the emotionally healthy. Rather, it is intended to include defendants, both disturbed and healthy, among those who are held criminally responsible." *Commonwealth v. Demmitt, supra,* 456 Pa. at 481, 321 A.2d at 631.

Looking at the evidence on the record in a light most favorable to the verdict-winner, we conclude that sufficient evidence was indeed presented from which the jury could have inferred, beyond a reasonable doubt, appellant's sanity on the date of August 1.

Lastly, appellant assigns as error the lower court's decision to admit at trial certain photographic evidence submitted by the Commonwealth. The three black and white photographs at issue show the bodies of the de-

ceased victims as discovered by the police. Appellant argues that because the defense did not deny the killings but rather claimed a lack of capacity to be held criminally liable, the decision below to admit the pictures was an abuse of discretion.

The Commonwealth sought to prove, through the introduction of this evidence, the logistics of where the killings took place, and, with respect to the store's manager, Mr. Atwood, powder burns around the gunshot wound in his forehead indicating a killing at extremely close range.

The lower court explained in its memorandum opinion accompanying its Order denying appellant's post-trial motions that the pictures were not "unduly gruesome" and that they served the purpose of proving as part of the Commonwealth's case against the appellant, a killing with malice.

While we have repeatedly held "that the practice of admitting photographs of the body of the deceased . . . is condemned," where a trial judge rules that their evidentiary value "outweighs the likelihood of inflaming the minds and passions of the jurors," we are constrained to reverse for a new trial absent an abuse of discretion. *Commonwealth v. Scaraminzin*, 455 Pa. 378, 381, 317 A.2d 225, 226 (1974); *Commonwealth v. Claitt*, 454 Pa. 313, 311 A.2d 922 (1973); *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968).

After viewing the exhibits and upon applying the appropriate standard of review on appeal, we find we must agree with the trial judge's conclusion that while no pictures of deceased persons are ever pleasant the evidentiary value of these particular pictures outweighed their potential for prejudice such as would warrant a reversal of the judgment below.

For all of the reasons expressed above, we affirm the judgment and sentence of the trial court.

POMEROY, J., filed a concurring opinion.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joined.

POMEROY, Justice (concurring).

I join the decision of the Court and that portion of its opinion which considers the admissibility of the psychiatric evidence and the sufficiency of the evidence. This concurrence is appended merely to restate in brief compass what I understand to be the Court's position on the admissibility of photographs of the body of a deceased person.

In *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A. 2d 844 (1974), we made it clear that the question of the admissibility of such photographs involves a two-step analysis. That analysis was spelled out succinctly in *Commonwealth v. Hilton*, 461 Pa. 93, 99, 334 A.2d 648, 651 (1975) (concurring opinion of Pomeroy, J., joined by Mr. Chief Justice Jones and by Justices Eagen, O'Brien and Nix), as follows:

"First, the trial court must decide whether the photograph possesses inflammatory characteristics. If the Court finds that it does not, the picture is admissible as is any evidentiary item, subject, of course, to the qualification of relevance. If, but only if, the photograph is deemed to be inflammatory, the Court must then apply the balancing test set forth in the majority opinion, i. e., is the photograph of 'such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.' *Commonwealth v. Garrison*, 459 Pa. 664, 666, 331 A.2d 186, 187 (1975); *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974)." 461 Pa. at 100, 334 A.2d at 652. [footnote omitted]

In the present case, as noted by the Court the trial court refused to exclude the proferred photographs from evidence because, as stated in its opinion denying post-verdict motions, the photographs "were not unduly gruesome, nor such as to influence the minds and passions of the jury." The trial court went on to state that the pictures "were of evidentiary value in clarifying the case for the jury and showing a killing with malice"—i. e., they were relevant. My review of the record satisfies me that the trial court did not abuse its discretion in reaching either of these conclusions and I therefore concur in the Court's decision to the same effect.

ROBERTS, Justice (dissenting).

I dissent. The trial court permitted the Commonwealth, over appellant's objection, to introduce into evidence, inflammatory photographs of the victims' bodies. The court, again over objection, also permitted these photographs to go out with the jury in its deliberations.[1] The photographs had no essential evidentiary value in the circumstances of this case, and their obvious potential for inflaming the jury necessitates that they be held inadmissible. Nevertheless, the majority, ignoring prior case law, condones the trial court's actions and thereby denies appellant his right to a fair trial.

The test for admitting photographs into evidence was enunciated by this Court in *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968).

"[T]he proper test to be applied by a trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly out-

---

1. It is within the sound discretion of the trial court to allow exhibits to go out with the jury. Rule 1114, Pa.R.Crim.P. However, here, where the photographs should not have been admitted, allowing them to go out with the jury compounded the prejudice to defendant.

weighs the likelihood of inflaming the minds and passions of the jurors."

428 Pa. at 278–79, 241 A.2d at 121.

In *Commonwealth v. Garrison*, 459 Pa. 664, 331 A.2d 186 (1975), this Court applied the *Powell* test to a fact situation identical to the one presented here. In *Garrison*, the defendant had been charged with murder, and her sole defense was insanity. She did not contest the cause of death, and a pathologist had adequately described the injuries sustained by the victim. Our Court held that in these circumstances the admission of eleven color slides of the deceased's body was reversible error. Mr. Justice Nix stated:

"Whether the purpose of the evidence was as asserted by the court en banc to illuminate the testimony of the pathologist or as suggested by the court in its charge to the jury to assist the jury in making a finding of a specific intent to kill, it is quite apparent that it sheds little light under either theory. . . . Whereas here there was an absence of any compelling reason for the admission of these slides, we are forced to conclude that their introduction was error."

459 Pa. at 668, 331 A.2d at 188.

Here, as in *Garrison*, there is no justification for the admission of the photographs. Appellant, who had pleaded not guilty by reason of insanity, did not deny his involvement in the shootings. A pathologist testified at length regarding the cause of death and the nature of the injuries, testimony which appellant did not contest. Moreover there is no indication that the pathologist requested or needed the photographs in order to testify. Given this uncontested testimony, the trial court's assertion that the photographs served to prove that appellant killed his victims with malice is insufficient to justify

their admission.[2]  The jury had ample evidence to determine whether malice could be inferred from the nature of the injuries.  The *Powell* standard requires that photographs have such *essential* evidentiary value that the likelihood of inflaming jurors is clearly outweighed by the need for the photographs.  *Commonwealth v. Garrison,* supra; *Commonwealth v. Powell,* supra.  See also *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974) (dissenting opinion of Roberts, J., joined by Manderino, J.).  Here where there is no evidentiary value to inflammatory photographs, the trial court abused its discretion in admitting them.  I would reverse the judgment of sentence and grant a new trial.

MANDERINO, J., joins in this dissenting opinion.

2.  The Commonwealth also attempts to justify the introduction of the photographs on the ground that they illuminated the location of the murders.  However, the police testified at trial as to the location of the bodies, and appellant did not dispute this testimony.