417 A.2d 724

**COMMONWEALTH of Pennsylvania**

v.

**Adam GREEN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1979.

Filed Dec. 28, 1979.

Reargument Denied March 28, 1980.

John S. Manos, Philadelphia, for appellant.

Arthur Shuman, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROBERTS and LIPEZ, JJ.*

CERCONE, President Judge:

Appellant was charged with stabbing his mother to death. In May, 1974, appellant was adjudged incompetent to stand

---

* Justice Samuel J. Roberts of the Supreme Court of Pennsylvania, and Judge Abraham H. Lipez of the Court of Common Pleas of Clinton County, Pennsylvania, are sitting by designation.

trial and committed to a state institution. In March, 1977, a psychiatric report pronounced appellant competent to stand trial. Trial began on September 21, 1977, and on September 30, 1977, a jury convicted appellant of murder of the first degree and possession of an instrument of crime. After denying post-verdict motions, the trial court sentenced appellant to life imprisonment for murder and imposed a concurrent term of 1½ to 3 years for possession of an instrument of crime. Appellant contends that (1) the evidence is insufficient to support the verdict of guilty of murder of the first degree over his defense of insanity; (2) the trial court erred in not requiring the Commonwealth to call an expert witness and in not calling the expert as a witness of the Court; (3) the trial court erred in refusing to give the jurors, upon request, an instruction informing them that commitment and psychiatric treatment could result from a verdict of not guilty by reason of insanity; (4) the trial court erred in denying his request to waive trial by jury; (5) the trial court did not charge on involuntary manslaughter; and (6) the prosecutor's summation was prejudicial. We affirm.

Appellant had often quarreled with his mother and had done so not long before the killing. On March 31, 1974, Willie Williams, a friend of the victim, entered the kitchen of the victim's home and saw appellant, kneeling, stabbing his mother with a knife. Williams ran to alert James Ford, appellant's brother, who lived nearby. After Williams left, Grady Patterson entered and also saw appellant kneeling and stabbing the victim. The back door was open and the kitchen shades were up. Patterson immediately left to call the police. Ford soon arrived, saw appellant stabbing the victim and grabbed his arm. Ford spoke to appellant as he restrained him but appellant did not answer. Moments later, the police arrived. They were unable to pry appellant's fingers from the knife until one of them struck him in the hand with a night stick. The officers lifted appellant from the floor and carried him into the living room. There, appellant called to Ford, "I love you." Without resistance,

appellant was placed in custody. Police photographs established that, at the time of appellant's apprehension, the back door was locked and the kitchen shades down. Approximately 7 to 15 minutes elapsed between the time Williams discovered appellant in the kitchen and the time the police arrived. Medical testimony established that the victim had been stabbed hundreds of times in vital parts of the body, including the thorax, where her vocal cords were severed.

Appellant raised the defense of insanity. He called Dr. Norman Jablon, a psychiatrist at a state institution. Jablon had examined appellant in December, 1973 and in May, 1974, soon after the killing. Although he could not express a medical opinion on whether appellant was legally insane at the time of the killing, he testified that his examinations of appellant revealed chronic schizophrenia, catatonia, confusion, memory impairment and loss of contact with reality. The Commonwealth did not call any expert witnesses, but Ford, appellant's brother, testified that several days before the killing, appellant was able to carry on a conversation, teach Ford a card game, drive a car and obey traffic signals, play pool, make a telephone call and operate a stereo set.

■ We find the evidence sufficient to sustain the verdict of guilty of murder of the first degree. The jury could have considered that appellant attacked his mother when no one was around to help her, closed the door and the curtains to prevent detection, stabbed her deliberately in vital parts of the body and severed her vocal cords to prevent her from crying out, recognized his brother and spoke to him. From this conduct and testimony of his rational behavior just days earlier, the jurors could have found beyond a reasonable doubt that, despite evidence of appellant's mental disorders, he was legally sane at the time of the killing. See *Commonwealth v. Vogel*, 468 Pa. 438, 364 A.2d 274 (1976); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974).**

** Appellant contends that the evidence showing that he closed the back door and the curtains is only circumstantial and that someone else may have performed those acts. The jury was entitled to draw from the evidence any reasonable inferences favorable to the Com-

■ Appellant argues that he should not have been forced to call Dr. Jablon as his own witness. According to appellant, the jurors were more likely to credit the psychiatrist's testimony if they did not think that he was testifying as a witness for the defense. The trial court did not err in refusing to require the Commonwealth to call Dr. Jablon and in not calling the expert as a witness of the court. Appellant established on direct examination that Dr. Jablon was an employee of the Commonwealth and had examined appellant at the direction of the court. Appellant emphasized these facts in his summation. Thus, the jurors were aware of the expert's status.

■ Before trial, appellant moved to waive his right to trial by jury. The Commonwealth opposed this request. The trial court denied appellant's request, relying upon the Act of August 8, 1977, P.L. 185, § 1, 17 P.S. § 931 (Supp. 1978–79), repealed, Act of April 28, 1978, P.L. 202, effective June 27, 1978, which provides that in criminal cases, the Commonwealth shall have the same right to trial by jury as does the accused. Appellant argues that this provision violates the Pennsylvania Constitution, art. V, § 10(c), by infringing upon the Supreme Court's exclusive jurisdiction to promulgate rules of criminal procedure. Appellant did not raise his constitutional claim at trial or in post-verdict motions. Thus, we do not consider this issue. See *Matter of Adoption of Christopher P.*, 480 Pa. 79, 389 A.2d 94 (1978).

The other issues appellant presents are not preserved for review. Appellant did not raise these issues in post-verdict motions. Although he presented them in his post-verdict brief, the post-verdict court did not consider them. See *Commonwealth v. Carrillo*, 483 Pa. 215, 395 A.2d 570 (1978).

Judgment of sentence affirmed.

monwealth. E. g., *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976). The reasonable inference to be drawn from the evidence is not that, while appellant was stabbing his mother, someone entered the kitchen, shut the back door and pulled the shades, but that appellant did so to avoid detection.