416 A.2d 1094

**COMMONWEALTH of Pennsylvania**

v.

**Samuel GUESS, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued July 30, 1979.

Filed Dec. 21, 1979.

William Lee Akers, Philadelphia, for appellant.

Shelly Robbins New, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, MANDERINO and CIRILLO, JJ.*

WATKINS, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Trial Division, Criminal Section, by the defendant-appellant, Samuel Guess, Jr., after conviction of third degree murder by a jury.

On August 30, 1976, the security guard of the Inn Towner Hotel on North Broad Street, Philadelphia, was summoned to Room 133 at about 11:45 P.M. When he got there he heard gunshots coming from the room and a female voice say: "No don't". He called his partner to watch the room and he called the police.

When he returned shortly with a police officer, they knocked on the door to Room 133 and someone from inside said he would open the door as soon as he put some clothes on. The guard, Tindal, also testified that he knew Samuel Guess from the defendant's visits to the hotel and that the voice answering from behind the door was that of Samuel Guess.

The victim's sister, Sheila Simmons, was employed at the hotel as a barmaid and was on the premises about the time of the shooting. She testified that between 11:30 P.M. and

* Justice Louis L. Manderino of the Supreme Court of Pennsylvania, and Judge Vincent A. Cirillo of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

11:45 P.M. that night she was told of noises in Room 133. Expecting her sister to be in that room with Samuel Guess, Sheila Simmons telephoned the room to see what was wrong. She testified that Guess, whom she knew, answered the phone and told her that Jane was all right, that she was fine. But, then, Sheila heard her sister's voice in the background say, "No, I'm not, Sheila, I'm dying".

Shortly thereafter, other police officers arrived. When they entered the room, Jane Spalding was lying on the floor moaning and severely wounded. She had been shot seven times. The defendant was the only other person in the room. The victim's sister came to the room and was asked to put some covering on Jane's body. At that point, the victim said to her sister, "Why did he do it". When the police inquired of Guess about the gun, he directed them to a .25 calibre automatic pistol under a pair of trousers on the bed. Shortly thereafter, Jane Spalding died of the seven gunshot wounds, all from a .25 calibre weapon.

At trial, the Commonwealth also presented the confessions of the appellant in which he admitted that he shot Jane Spalding during an argument.

Appellant alleges it was error to admit his confession into evidence because of drunkenness and influence of drugs. The findings of the court below after a suppression hearing are clearly supported by the record and are binding on the trial court. *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976). Uncontradicted testimony indicated he was alert, co-operative and in full control of his senses. *Commonwealth v. Biagiarelli*, 454 Pa. 264, 311 A.2d 901 (1973); *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Eden*, 456 Pa. 1, 317 A.2d 255 (1974).

Appellant claims the court erred in permitting the medical examiner to give his opinion regarding the position of the victim's body when she was shot.

A physician who examines the gunshot wounds suffered by a decedent may give his opinion regarding the

direction and distance from which such wounds were inflicted though that physician is not qualified as a ballistics expert. *Commonwealth v. Gonzales*, 463 Pa. 597, 345 A.2d 691 (1975).

Dr. Catherman, the forensic pathologist who performed the decedent's autopsy, was qualified as a medical expert. The doctor testified regarding the nature, location and effect of the decedent's bullet wounds. Based upon his examination of the decedent and of a photograph taken at the crime scene depicting bullet holes in the wall from which bullets were extracted, Dr. Catherman believed that the decedent had been shot at least three times while reclining.

The facts underlying the question asked of the doctor had already been established at trial. The defendant admitted that his victim was in a reclining position when he shot her. Therefore, the question was proper, as was the doctor's answer. See *Commonwealth v. Smith*, 480 Pa. 524, 391 A.2d 1009 (1978); *Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978); *Commonwealth v. Chism*, 480 Pa. 233, 389 A.2d 1041 (1978); *Houston et vir v. Canon Bowl, Inc.*, 443 Pa. 383, 278 A.2d 908 (1971). Additionally, the doctor agreed with the defense during cross-examination that the wounds were also consistent with other possible positions of decedent during the shooting. The defendant's claim goes merely to the weight to be accorded the doctor's testimony and not to its admissibility. *Commonwealth v. Gonzales, supra.*

The appellant finally alleges that the trial court erred in permitting Mr. Paul, a ballistician, to state his opinion as to whether more than one bullet could have been discharged from the gun with one pull of the trigger. The ballistic expert's testimony as to the fact that the gun could not discharge seven shots with one pull of the trigger was based on personal knowledge of this type of gun and a one shot test of same. This testimony was further corroborated by a witness to the gun shot he heard. Such guns are not fully

automatic. *Commonwealth v. Newsome*, 462 Pa. 106, 337 A.2d 904 (1975).

Judgment of sentence affirmed.

MANDERINO, J., concurs in the result.

This decision was reached prior to the death of MANDERINO, J.