## Commonwealth v. Kerrigan

*Matthew Falk, deputy district attorney,* for Commonwealth.

*Norris Gelman,* for defendant.

458

STEINBERG, *J.*, November 17, 2005—On December 9, 2004, the defendant, Daniel Kerrigan, was found guilty after a jury trial of rape of a child,[1] rape of a child (serious bodily injury),[2] involuntary deviate sexual intercourse,[3] involuntary deviate sexual intercourse (serious bodily injury),[4] aggravated indecent assault[5] (2 counts), indecent assault,[6] and corruption of minors.[7] The defendant was convicted of sexually abusing A.R. in a variety of ways. The sexual abuse began when she was 7, and continued until she was 10, when it was discovered that she had genital warts.

A presentence report was completed as well as a sex offender evaluation by the Sexual Offenders Assessment Board. However, sentencing was delayed due to the entry of appearance of appellate counsel, Norris Gelman, and the withdrawal of the appearance of trial counsel, Brett Riegel.

On July 13, 2005, the defense conceded that the Commonwealth could demonstrate by clear and convincing evidence that the defendant was a sexually violent predator, and an order to that effect was entered. Not only did the sex offender evaluation conclude that the defendant met the diagnostic criteria for pedophilia,[8] but his prior convictions were for sexual assault (aggravated) and related offenses involving his stepdaughter. He was sen-

---

1. 18 Pa.C.S. §3121(c).
2. 18 Pa.C.S. §3121(d).
3. 18 Pa.C.S. §3123(b).
4. 18 Pa.C.S. §3123(c).
5. 18 Pa.C.S. §3125(a)(1), (b).
6. 18 Pa.C.S. §3126(a)(7).
7. 18 Pa.C.S. §6301(a)(1).
8. A sexual arousal to prepubescent children.

tenced to 14 years imprisonment in New Jersey in 1991, and was paroled in 1994. The evaluator's analysis of the defendant was that his "long-term abuse of the current victim and past history of conviction and accusations of abuse reveal the presence of patterned sexual deviance. . . . He committed an escalated pattern of sexual assault that included penetration of the child vaginally and anally in a four-year time period." [9]

On July 13, 2005, following review of the pre-sentence report, the sentencing guidelines and a sentencing hearing, a total sentence of not less than 25 years nor more than 50 years in a state correctional institution was imposed.[10] Thereafter, counsel filed "post-sentencing motions," and a hearing on those motions was held on October 10, 2005.

The defendant sexually abused A.R. while she resided in the Whittier Apartments in Catasauqua, Lehigh County, Pennsylvania. Earlier abuse had also taken place in New Jersey, where the defendant met the victim's mother, Donna Rutkowski.

Ms. Rutkowski met the defendant in approximately 1994, and the two began dating in 1996. They began living together in 1999, and moved to Catasauqua in 2001. The victim, who referred to the defendant as "Dad," although he is not her biological parent, also was a member of the household.

9. Sex offender evaluation, p. 4.

10. A sentence of 10 to 20 years was imposed on the rape of a child offenses and a consecutive 10- to 20-year sentence was imposed on the involuntary deviate sexual intercourse charges. Those sentences were ordered to run consecutively with a five- to 10-year sentence on the aggravated indecent assault charges. The remaining offenses were imposed concurrently.

During their residence at the Whittier Apartments, A.R. made her first accusations of sexual abuse against the defendant. Following a discussion between all three, in which the defendant denied the accusation, Donna Rutkowski chose not to believe her daughter. A.R. made additional accusations of sexual abuse against the defendant, and each time the defendant denied it, and no further action was taken. Finally, following a physical inspection of her daughter's genital area, Donna Rutkowski made an appointment with a physician, and genital warts were discovered.

Doctor John Van Brakle, Chairman of Pediatrics at Lehigh Valley Hospital, was qualified as an expert in pediatric medicine and examination and treatment of child sexual assault injuries. Doctor Van Brakle examined A.R. and discovered "a series of dark lesions, spots, that were in the area around her anus, and then more anteriorally to the area surrounding her vaginal area." [11] The genital warts had previously been removed by Dr. John Scaffidi, whose testimony was presented by stipulation. [12] Doctor Scaffidi saw A.R., who was 10 at that time, and discovered that she had HPV (Human Papillomavirus) "or genital warts around her vagina and anus. On that date he used a laser to vaporize all of her external genital warts around her vagina and anus." [13]

It was explained by Doctor Van Brakle that genital warts are transmitted primarily, although not exclusively, by "genital to genital contact." [14] HPV is the most com-

---

11. Notes of Testimony, trial, volume II, p. 116 (N.T.T. vol. II).
12. N.T.T. vol. II, pp. 111-12.
13. N.T.T. vol. II, p. 112.
14. N.T.T. vol. II, p. 120.

mon sexually transmitted disease amongst adolescents in the United States. This virus is associated with a variety of genital cancers, including cervical cancer. In fact, A.R. is at a higher risk of developing cervical cancer or cancer of the rectum because she is HPV positive. "It's thought that, at least 80 percent . . . perhaps 90 percent of cervical cancer is a result of previous HPV infection." [15] Finally, Doctor Van Brakle rendered the opinion that evidence of sexual abuse was present.

A.R. disclosed that the defendant began touching her when she lived in New Jersey. Following their arrival at the Whittier Apartments, the abuse continued and escalated to vaginal and anal intercourse.[16] The repeated incidents of sexual abuse took place in various rooms within the home while her mother was either not home or sleeping. They also increased as she got older with the most frequency at their last residence in Catasauqua.[17]

The defendant, during an interview with Marlene Dal Maso, a child protective services worker, told her that he had a genital wart outbreak about 20 years earlier.[18] He also offered the possibility that he may have given A.R. her genital warts by accidentally touching her after he masturbated.[19]

The defendant denied sexually abusing A.R., and claimed that he had a crown wart removed from his penis in 1982.[20] He admitted making statements to Ms. Dal

15. N.T.T. vol. II, p. 126.

16. N.T.T. vol. II, pp. 258-65.

17. N.T.T. vol. II, p. 264.

18. N.T.T. vol. II, p. 208.

19. N.T.T. vol. II, p. 250.

20. Notes of Testimony, trial, volume III, pp. 20, 28 (N.T.T. vol. III).

Maso about warts and how they may have been transmitted to A.R.[21] A stipulation was also introduced that the defendant was tested in prison and no genital herpes or warts were discovered. However, Doctor Van Brakle pointed out that HPV has a "very variable course. The HPV can be active with lesions, meaning that there are— the virus is present and you have—and warts are present. It can be active, in the sense that virus can be shed from the individual, and there are no warts present. . . . It's also possible that the virus can be latent for a period of time, so that you can—we can do our best, in terms of trying to determine the virus, we can find no traces of the virus, and then subsequently, the individual can develop clinical—a recurrence of clinical infection."[22]

Various claims are raised in the post-sentence motions, including the allegation that the Commonwealth did not establish jurisdiction. Specifically, it is alleged that because the victim was sexually abused in New Jersey and Pennsylvania, the failure to properly instruct the jury that their decision related to incidents in Lehigh County may have resulted in the jury finding him guilty for acts in New Jersey.[23]

This claim is directly contradicted by the opening and closing instructions provided to the jury. During the opening instructions, the jury was told that the Commonwealth was alleging that "on or between July of 2001 and March of 2003, in various locations, including the Whittier Apartments located at 811 Poplar Street, Catasauqua, Lehigh County, Pennsylvania," the defendant commit-

---

21. N.T.T. vol. III, pp. 27, 29-30.
22. N.T.T. vol. II, pp. 121-22.
23. Post-sentence motions, pp. 7-22.

ted the identified offenses.[24] They were even told not to visit the Whittier Apartments.[25] Prior to the defendant's testimony, all parties recognized that "obviously the jury is deciding whether sexual conduct took place in the County of Lehigh."[26] The following discussion then took place with counsel:

"The Court: It is relevant that the parties lived together in New Jersey, and it began in New Jersey, but if the jury—and I don't see this happening—but if the jury concluded, listen, we only think it happened in New Jersey, they would be obliged to conclude the defendant is not guilty of these charges, because it requires these charges to have occurred in the County of Lehigh.

"Now, in my instructions I'm going to tell them one of the things that they're going to have to decide is, what did actually happen in Catasauqua, County of Lehigh, between the defendant and [A.R.]?

"And, I don't know if they're going to come back with a question concerning that, or not.

"Do either counsel have any other way to deal with that issue?

"Mr. Falk: Judge, I think that's fine.

"Mr. Riegel: I would wait for the question, I agree.

"The Court: Okay. You're satisfied with that?

"Mr. Riegel: Yes."[27]

---

24. N.T.T. vol. II, p. 32.
25. N.T.T. vol. II, p. 50.
26. N.T.T. vol. III, p. 7.
27. N.T.T. vol. III, pp. 7-8.

Pursuant to that discussion, the following closing instruction was provided:

"The Court: What did actually happen in Catasauqua, Lehigh County, between [A.R.] and Daniel Kerrigan, if anything." [28]

Additionally, the defense conceded A.R. was sexually abused, but claimed the defendant was not responsible for that abuse. The defendant, in his own testimony, agreed that A.R. was sexually abused but testified he did not do so.[29] Therefore, jurisdiction would only have been of concern if the defense had made the questionable strategic decision to allege that the defendant abused A.R. in New Jersey, but not Pennsylvania. No confusion existed on the part of the jury. The instructions focused the jury on Lehigh County by location and date (2001-2003),[30] counsel agreed on the instructions, and the defense contested the perpetrator not the jurisdiction.

In *Commonwealth v. Duden,* 326 Pa. Super. 73, 86, 473 A.2d 614, 621 (1984), it was also alleged that the trial court "erred in failing to specifically instruct the jury on the law concerning jurisdiction." *Id.;* see also, *Commonwealth v. Passmore,* 857 A.2d 697, 709 (Pa. Super. 2004). However, it is well settled that "[j]urisdiction is a legal issue and therefore is not normally a concern for the jury." *Duden,* 326 Pa. Super. at 86, 473 A.2d at 621. "Where the facts underlying jurisdiction are not in dispute, the rule is as follows:

---

28. N.T.T. vol. III, p. 86.

29. N.T.T. vol. III, p. 35.

30. N.T.T. vol. II, p. 160. Donna Rutkowski testified that they moved to Catasauqua in 2001.

"There is no duty on a trial judge to charge a jury upon law which has no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at the trial: *Commonwealth v. Coleman,* 402 Pa. 238, 166 A.2d 525 (1961)." *Id.* (quoting *Commonwealth v. Whiting,* 409 Pa. 492, 498, 187 A.2d 563, 566 (1963)).

Here, the defendant received a jurisdiction instruction even though it was never integral to the defense. There was no real issue as to jurisdiction until this retrospective analysis attempted to reframe the defense.

The defendant also claims that counsel was ineffective in failing to object to our instructions concerning reasonable doubt and credibility. It would appear appellate counsel suggests that in some manner the use of a credibility instruction "imposed a burden of believability on the defendant." [31] The record refutes this claim.

The following instruction on reasonable doubt and presumption of innocence was presented to the jury:

"A fundamental principle of our system of criminal law is that the defendant is presumed to be innocent.

"The mere fact that he is arrested, and is accused of a crime, is not any evidence against him. Furthermore, the defendant is presumed innocent throughout the trial and unless and until you conclude, based upon impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt.

"It's not the defendant's burden to prove that he is not guilty. It is the Commonwealth that always has the burden of proving each and every element of each crime

31. Post-sentence motions, pp. 3-7.

charged and that the defendant is guilty of those crimes beyond a reasonable doubt.

"If the Commonwealth's evidence fails to meet its burden with respect to any of those offenses, then your verdict must be not guilty with respect to those offenses the Commonwealth has not proven beyond a reasonable doubt.

"On the other hand, if the Commonwealth's evidence does prove, beyond a reasonable doubt, that the defendant is guilty of any of these offenses, then your verdict should be guilty with respect to those offenses they have proven beyond a reasonable doubt.

"Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt, or to a mathematical certainty, because there are a few things in life that we can be absolutely certain about.

"Nor must it demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs.

"A reasonable doubt must fairly arise out of the evidence that was presented, or out of the lack of evidence presented, with respect to some element of the crime.

"A reasonable doubt must be a real doubt. It may not be an imagined one, nor may it be manufactured to avoid carrying out an unpleasant duty.

"So, to summarize, you may not find the defendant guilty based on mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty

beyond a reasonable doubt. If it meets that burden, then the defendant is no longer presumed innocent, and you should find him guilty.

"On the other hand, if the Commonwealth has not met its burden, then you must find him not guilty." [32]

This instruction is in accord with the requirements of *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1984). See also, *Commonwealth v. Uderra,* 580 Pa. 492, 862 A.2d 74, 92 (2004); *Commonwealth v. Murphy,* 559 Pa. 71, 739 A.2d 141, 146-48 (1999). "The Constitution does not dictate that any particular form of words be used in advising the jury of the government's burden of proof, so long as taken as a whole, the instructions correctly convey the concept of reasonable doubt." *Victor,* 511 U.S. at 1, 5, 114 S.Ct. at 1241, 1243.

A full instruction on credibility was also provided to the jury.[33] Credibility was an issue in this case and the jury needed tools to understand how to resolve that dilemma. No burden shifting was created, either real or imagined, by providing guidance on this issue. "Questions of credibility must always be put before the jury as the fact-finder and the judge must instruct the jury as to credibility considerations applicable to the case." *Commonwealth v. Snoke,* 525 Pa. 295, 580 A.2d 295, 298 (1990). (citations omitted) It appears that appellate counsel is complaining about the placement of the credibility instruction rather than its content. Additionally, attempting to focus on one or two words or paragraphs taken out of context, as counsel is well aware, will not be sub-

---

32. N.T.T. vol. III, pp. 108-10.
33. N.T.T. vol. III, pp. 88-94.

ject to review. *Murphy,* 739 A.2d at 146. "When evaluating the adequacy of jury instructions, the charge must be read in its entirety. (citation omitted) Error cannot be predicated on isolated excerpts of the charge; it is the general effect that controls." (citation omitted) *Id.;* see also, *Commonwealth v. Cox,* 581 Pa. 107, 129, 863 A.2d 536, 549 (2004).

The defendant's citations to *Victor v. Nebraska, supra* and *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) do not lead to a different conclusion. In *Cage,* the Supreme Court concluded that the "reasonable doubt instruction" violated the Due Process Clause because the words used, "substantial" and "grave," suggested a higher degree of doubt. Likewise, *Humanik v. Beyer,* 871 F.2d 432 (1989), pertains to the burden of proof when establishing a diminished capacity defense, and has no applicability.

A review of the complete charge discloses that credibility and reasonable doubt were clearly explained to the jury, and counsel was not ineffective by not objecting to those instructions. The requirements appellate counsel would impose on structuring a credibility instruction would create a conundrum impossible to solve.

The defendant also contends that Doctor Van Brakle improperly bolstered A.R.'s testimony when he relied, in part, on her history in rendering his opinion that she was a victim of sexual abuse. Doctor Van Brakle was not bolstering the victim's testimony, but merely relying upon it to reach his opinion. He also relied upon the presence of an HPV infection, and the physical examination, which included evidence of anal trauma. His testimony did not bolster the victim nor implicate the defendant, but merely

supported an opinion of genital to genital contact with an adult male, a fact to which everyone agreed. See *Commonwealth v. Fink,* 791 A.2d 1235, 1247 (Pa. Super. 2002) (A physician is permitted to testify that his or her findings following examination are consistent with a victim's allegations of abuse); see also, *Commonwealth v. Hernandez,* 420 Pa. Super. 1, 13-14, 615 A.2d 1337, 1343 (1992).

It is also alleged that a mistrial should have been granted when Marlene Dal Maso, the child protective service worker, inadvertently mentioned the following:

"He indicated that he tested negative for genital warts, that he had an outbreak about 20 years earlier. That during a stay of prison in New Jersey he had test. . . ."[34]

Counsel immediately objected, and the objection was sustained. He then requested a mistrial, which was denied. This court offered to provide a cautionary instruction, which after consultation with his client, counsel rejected.[35] The witness was instructed not to repeat that reference to his incarceration, and there was no further problem.

"Not all references which may indicate prior criminal activity require reversal. Mere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference." *Commonwealth v. Guilford,* 861 A.2d 365, 370 (Pa. Super. 2004) (quoting *Commonwealth v. Blystone,* 555 Pa. 565, 580, 725 A.2d 1197, 1204-1205 (1999)).

---

34. N.T.T. vol. II, p. 208.
35. N.T.T. vol. II, p. 212.

Here, the reference was not intentionally elicited nor was it exploited, both of which are factors to evaluate in deciding this claim. Furthermore, the decision of the defendant not to request a cautionary instruction constitutes a waiver of this issue. *Commonwealth v. Bryant,* 579 Pa. 119, 141, 855 A.2d 726, 739 (2004); *Commonwealth v. Wallace,* 522 Pa. 297, 561 A.2d 719 (1989). In *Wallace,* a witness testified that he met the defendant in the "West Virginia Penitentiary." A motion for mistrial was made, and when denied, an offer by the trial judge to give a cautionary instruction was refused. The failure to accept the cautionary instruction nor object when one was not given constitutes a waiver of the argument. *Id.* at 307, 561 A.2d at 724. See also, *Blystone,* 725 A.2d at 1205 (counsel was not ineffective in not requesting a cautionary instruction where it might highlight statements).

The court in denying the request for a new trial also reiterated that there is no per se rule that requires a new trial for a defendant every time there is a reference to prior criminal activity. In this case, the testimony did not relate to any specific past criminal act and while the testimony might have inferentially exposed a prior conviction, the jury had no direct knowledge of the basis of that conviction. *Wallace,* 522 Pa. at 308, 561 A.2d at 724-25.

The defendant also alleges counsel was ineffective in not pursuing a motion to dismiss pursuant to Pa.R.Crim.P. 600. However, a review of the relevant time period discloses that Rule 600 had not expired. The defendant originally entered guilty pleas to some of the charges on January 20, 2004. Thereafter, he was permitted to withdraw

his guilty plea on May 10, 2004.[36] On that date, it was decided that a taint hearing[37] had to be scheduled, and it was agreed it would be held on July 13, 2004. Thereafter, trial counsel requested and was granted a continuance of that hearing date, due to a trial conflict. The date of September 30, 2004, was then selected, and the taint hearing was held on that date. Trial was then scheduled and commenced on December 7, 2004.

Pa.R.Crim.P. 600(D)(1) states the following:

"(D)(1) When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 120 days after the date of the order granting a new trial, if the defendant is incarcerated on that case. If the defendant has been released on bail, trial shall commence within 365 days of the trial court's order."

The Comment to Rule 600 explains that "[t]he withdrawal of . . . a guilty plea should be considered the granting of a new trial for purposes of this rule." See *Commonwealth v. Bowes,* 839 A.2d 422, 426 (Pa. Super. 2003) (The new period began to run when [the defendant] withdrew his guilty plea). The defendant tendered his plea on January 20, 2004, and that tolled the running of Rule 600. *Id.* at 425. It was not until he withdrew his plea on May 10, 2004, that the 120-day time period commenced. Thereafter, delays in commencing trial were due to defense counsel's continuance and the need to resolve the taint hearing requested by the defense. See Pa.R.Crim.P.

36. He was not permitted to withdraw his guilty plea to the charge of failure to register (Megan's Law), 42 Pa.C.S. §9795.2(b). On September 30, 2004, he was sentenced to 36 months to 72 months in a state correctional institution on that charge. No appeals are pending in that matter.

37. *Commonwealth v. Delbridge,* 578 Pa. 641, 855 A.2d 27 (2003).

600(C)(3), which excludes from the commencement period: "such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney." See also, *Commonwealth v. Hill,* 558 Pa. 238, 736 A.2d 578 (1999) (Time between filing and resolution of defendant's pretrial motions is excludable from the speedy trial period if the motion delayed trial and thus made the defendant unavailable). As a result of trial counsel's continuance, and the need to decide the taint hearing, only 68 days of non-excludable time expired when trial commenced.[38]

The defendant also alleges that HPV does not constitute serious bodily injury. Both rape of a child (serious bodily injury) and involuntary deviate sexual intercourse (serious bodily injury) add the additional requirement of proving that the complainant "suffers serious bodily injury in the course of the offense" 18 Pa.C.S. §§3121(d), 3123(c). "Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. §2301. The defendant's long-standing sexual abuse of A.R. caused HPV, a sexually transmitted disease. A disease of that nature, warts and all, constitutes bodily injury. See *People v. Calvo,* 628 N.E.2d 856 (Ill. App. 1993) (chlamydia constitutes bodily harm). The serious bodily injury component is the link between HPV and cervical cancer.

---

38. All of the time from July 13, 2004 to September 30, 2004 is excludable. The only period that is not excludable would be September 30, 2004 to December 7, 2004 (68 days).

"The association between HPV and cervical cancer was first suggested in the 1970s. Numerous epidemiologic and molecular studies performed since then have provided virtually irrefutable evidence for the role of HPV as an etiologic agent in cervical cancer and other anal and genital tract cancers as well. Cervical cancer is the second most common cancer in women throughout the world . . . cervical cancer is associated with high mortality." [39] Worldwide, cervical cancer is the second-leading cause of cancer death in women. In the United States, approximately 10,000 women will develop cervical cancer each year, resulting in almost 3,000 deaths. [40]

It is an understatement to suggest that A.R. does not have an increased risk of cervical cancer. Further evidence of that fact can be found by virtue of HPVDNA being detected in adequate specimens of cervical cancer in 90-100 percent of cases. [41] Therefore, the defendant's sexual contact is directly linked to a life-threatening sexually transmitted disease. He compromised and impaired the victim's immune system. See *Commonwealth v. Alston*, 748 A.2d 677 (Pa. Super. 2000) (Various communicable diseases likely to produce serious bodily injury); *United States v. James*, 957 F.2d 679 (1992) (9-

39. Laura Koutsky Ph.D., *Epidemiology of Genital Human Papillomavirus Infection*, Department of Epidemiology, University of Washington, HPV Research Group, Seattle, Washington, 1997; see also, National Institute of Health. *Consensus Development Statement on Cervical Cancer*, Bethesda, Maryland, April 1-3, 1996.

40. National Cancer Institute, U.S. National Institutes of Health, *What You Need To Know About Cancer of the Cervix, http://www.nci.nih.gov/cancertopics/wyntk/cervix/page* 7, posted 3/18/05.

41. Bosch F.X., Lorinez A. Munoz N., et al. 2002, *The Casual relation between human papillomavirus and cervical cancer*. J. Clin Pathol 55: 244-65.

year-old girl infected with genital herpes as the result of repeated sexual assaults has suffered permanent bodily injury); *United States v. Reister,* 40 M.J. 666 (1994) (Genital herpes is a virus which recurs at any time . . . the recurring nature of the disease, along with associated medical problems it can cause, permits it to be considered a means likely to produce grievous bodily harm). In *James,* 957 F.2d at 681 it was explained as follows:

"Herpes is a highly contagious disease transmitted through sexual activity. The disease has obvious and detrimental impacts on a person's life-style and relationships. Because of the danger of transmittal of the disease during child birth, medical literature recommends a caesarean alternative. Beyond the physical dimension, the district judge noted the unique emotional and psychological impairments resulting from this assault. '[W]e must appreciate in this case the fact that the disease is permanent, is recurring. And while someone may overcome the psychological trauma of sexual abuse, it's also clear that by virtue of the recurring nature of this particular disease, that it would be [a] constant and recurring reminder of the abusive act itself, or acts in this case.'"

The remaining claims are without merit and will be addressed briefly and in seriatim fashion. It is alleged that *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), affects the testimony of Detective Rentko and Doctor Van Brakle even though the victim testified at trial. Counsel recognizes that *Crawford* has no applicability if the witness testifies, but suggests that her testimony was "the functional equivalent of her not having testified."[42]

---

42. Post-sentence motions, p. 25.

The Supreme Court in *Crawford* left no doubt that when a declarant appears for cross-examination at trial, the confrontation clause places *no constraints* at all on the use of her prior out-of-court testimonial statements. Specifically, the Supreme Court stated the following:

"Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places *no constraints at all* on the use of his prior testimonial statements. See *California v. Green,* 399 U.S. 149, 162 [, 90 S.Ct. 1930, 26 L.Ed.2d 489] (1970). It is therefore irrelevant that the reliability of some out-of-court statements 'cannot be replicated, even if the declarant testifies to the same matters in court.' *Post,* at 74 (quoting *United States v. Inadi,* 475 U.S. 387, 390 [, 106 S.Ct. 1121, 89 L.Ed.2d 390] (1986)). The clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See *Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985))."

Counsel is now attempting to interpret the phrase "no constraints" in a manner which will limit the scope of Detective Rentko's and Doctor Van Brakle's testimony. Their testimony was authorized by statute without restraint. See 42 Pa.C.S. §5985.1;[43] see also, *State v. King,* 2005 WL 1492001 (Ala. Crim. App.) (Counsel's attempt to limit the testimony of child-advocacy workers which exceeded the testimony of the victim was rejected). De-

---

43. A full hearing was held, as required by the statute, and this testimony was admitted under the tender years exception to the hearsay rule.

fense counsel cannot be deemed ineffective for failing to raise a *Crawford* challenge to the testimony of other witnesses, when the victim's testimony was challenged by the "crucible of cross-examination." *Crawford,* 541 U.S. at 61, 124 S.Ct. at 1370, 158 L.Ed.2d at 199.

Finally, it is alleged that the Commonwealth failed to establish "proof of penetration of A.R. in any manner in Lehigh County." [44]

A claim challenging the sufficiency of the evidence asserts that there is insufficient evidence to support at least one material element of the crime for which the defendant was convicted. *Commonwealth v. Lyons,* 833 A.2d 245, 258 (Pa. Super. 2003). In *Commonwealth v. Taylor,* 831 A.2d 661 (Pa. Super. 2003), the standard for reviewing sufficiency challenges was explained in the following manner:

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the

---

44. Post-sentence motions, p. 22.

crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Taylor,* 831 A.2d at 663 (quoting *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa. Super. 2001)).

See also, *Commonwealth v. Trimble,* 419 Pa. Super. 108, 615 A.2d 48 (1992). Thus, viewing the evidence in the light most favorable to the Commonwealth, it must be determined whether the jury properly concluded that the element of penetration in Lehigh County was established beyond a reasonable doubt.

This claim seems to focus on the location of the penetration rather than the penetration itself. However, in an effort to avoid any confusion, it is important to recognize that the requirement for sexual intercourse is "penetration however slight." 18 Pa.C.S. §3101. "It is clearly established that there is no requirement that penetration reach the vagina." *Trimble, supra* at 112, 615 A.2d at 50. Furthermore, a victim's childlike statements are sufficient to establish penetration. *In re A.D.,* 771 A.2d 45, 49 (Pa. Super. 2001) (The statements of the victim, which included words such as pee-pee sufficiently established penetration).

The medical testimony alone, which included evidence of genital warts and anal trauma, provided proof of penetration. Additionally, the victim and the corroborating witnesses established penetration beyond a reasonable doubt.[45] "He had put his private inside where she pees

---

45. N.T.T. vol. II, pp. 75, 258, 261-65.

and poops."[46] The location of the penetration is a variation of the jurisdiction claim, and equally unavailing to the defendant. The testimony revealed that the defendant groomed the victim in New Jersey by touching her, and then escalated his sexual abuse when they moved to Pennsylvania. The abuse "increased as she got older. With each move [it] increased. There wasn't as much when they lived in New Jersey. Then when they moved to Whittier it increased. And then to . . . I believe it's Poplar Street, it again increased and continued."[47] This evidence satisfies any requirement that the Commonwealth demonstrated that penetration occurred in Lehigh County.[48]

## ORDER

And now, November 17, 2005, the defendant's "postsentencing motions" are hereby denied and dismissed.

---

46. N.T.T. vol. II, p. 261.

47. N.T.T. vol. II, p. 264.

48. The defendant also contends that trial counsel was ineffective in not requesting a cautionary jury instruction pertaining to the sexual abuse in New Jersey. In light of the defendant's denial that he committed any of the acts in either jurisdiction, the failure to request that type of an instruction did not prejudice the defendant. Appellate counsel's hindsight evaluation would require trial counsel to deny the sexual abuse, but claim if abuse happened, it only occurred in New Jersey. This court is not prepared to require such an impractical strategic decision. In order to prevail on this issue, the defendant must demonstrate that, had a cautionary instruction been given, "there is a reasonable probability that the outcome of his trial would have been different." *Commonwealth v. Battle,* 883 A.2d 641, 649 (Pa. Super. 2005); *Commonwealth v. Potts,* 388 Pa. Super. 593, 609, 566 A.2d 287, 295 (1989) (Failure of trial counsel to request a cautionary instruction pertaining to prior bad acts did not prejudice the defendant because, even if the trial judge had provided that instruction, the jury would have convicted). Trial counsel's decision was rooted in the strategic decisions associated with the defense, and this issue is meritless.